BRADLEY J. HURD et al., Appellants, *v.* CITY OF BUFFALO, Respondent.

Fourth Department, May 18, 1973.

*Branch, Van Voorhis & Wise (John Van Voorhis* of counsel), for appellants.

*Anthony Manguso, Corporation Counsel (Stanley A. Moskal, Jr.,* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon* and *Ruth Kessler Toch* of counsel), in his statutory capacity under section 71 of the Executive Law.

MOULE, J. In 1971–1972 the City of Buffalo levied a real property tax of $73,923,246, including $23,327,290 for pension

and retirement payments, upon the taxable real estate in the city. The five-year average full valuation of the taxable real estate, as defined in section 10 of article VIII of the New York State Constitution[1], was \$1,975,599,114. The 2% real property tax limit, as imposed by section 10 of article VIII of the Constitution, was \$39,511,982 and the amount for interest and principal on capital outlay was \$16,703,951, totaling \$56,215,933, which were concededly proper tax levies under the Constitution[2].

Thus, the \$73,923,246 exceeded the \$56,215,933 proper tax levies by \$17,707,313 because of the pension and retirement payments of \$23,327,290, and the question is whether the levy for pension and retirement payments was excepted from the constitutional tax limitation because of subdivision (b) of section 11 of article VIII of the Constitution[3] and paragraph 42-a of subdivision a of section 11.00 of the Local Finance Law which read: " All or any part of the amount payable by a city with a population of more than two hundred seventy-five thousand but less than one million inhabitants according to the last federal census, or one million six hundred seventy-five thousand dollars by the city of Yonkers for the nineteen hundred seventy tax year or four million two hundred seventy-eight thousand seven hundred fifty-seven dollars by the city of Yonkers for the tax year July first, nineteen hundred seventy-two through June thirtieth, nineteen hundred seventy-three, for pension or

1. Section 10 of article VIII of the New York Constitution provided: " The average full valuation of taxable real estate of such county, city, village or school district shall be determined by taking the assessed valuations of taxable real estate on the last completed assessment rolls and the four preceding rolls of such county, city, village or school district, and applying thereto the ratio which such assessed valuation on each of such rolls bears to the full valuation, as determined by the state tax commission or by such other state officer or agency as the legislature shall by law direct."

2. Section 10 of article VIII of the New York Constitution also provided: " Hereafter, in any county, city, village or school district described in this section, the amount to be raised by tax on real estate in any fiscal year, in addition to providing for the interest on and the principal of all indebtedness, shall not exceed an amount equal to the following percentages of the average full valuation of taxable real estate of such county, city, village or school district * * * (b) any city of one hundred twenty-five thousand or more inhabitants according to the latest federal census, for city purposes, two per centum ".

3. Subdivision (b) of section 11 of article VIII read: " Whenever any county, city * * * provides by direct budgetary appropriation for any fiscal year for the payment in such fiscal year or in any future fiscal year or years of all or any part of the cost of an object or purpose for which a period of probable usefulness has been determined by law, the taxes required for such appropriation shall be excluded from the tax limitation prescribed by section ten of this article unless the legislature otherwise provides."

retirement liabilities including but not limited to the employ-ers' contribution to the New York state employees' retirement system, the New York state teachers retirement system and the social security fund of the New York state social security agency, three years, provided, however, that the cost thereof for any fiscal year shall be provided by direct budgetary appro-priation for payment in such fiscal year."

Although every statute carries a strong presumption of con-stitutionality, the courts may nevertheless inquire as to whether its enactment was permissible under the Constitution. "Due process demands that a law be not unreasonable or arbitrary". (*Defiance Milk Prods. Co.* v. *Du Mond,* 309 N. Y. 537, 541.) If paragraph 42-a excepts levies for certain expenditures from the 2% tax limit arbitrarily and without any rational basis, it is unconstitutional.

The holdings in *Cherey* v. *City of Long Beach* (282 N. Y. 382) and *Bugeja* v. *City of New York* (24 A D 2d 151, affd. 17 N Y 2d 606) are urged in support of the constitutionality of para-graph 42-a. In *Cherey,* payment of judgments was held to be a proper purpose for the issuance of bonds because it had a period of probable usefulness extending for several years, which was the number of years of hardship which would have occurred had the judgments been paid by a tax levy were the bonds not issued. In *Bugeja,* the court held a statute (L. 1965, ch. 440) to be valid which empowered the Mayor of New York to author-ize the issuance of bonds to provide for payment of the city's pension or retirement liabilities during the fiscal year 1965.

However, both of those cases involved statutes which pro-vided for a one-time funding of obligations, while paragraph 42-a provides that ordinary yearly ongoing pension payments would have periods of probable usefulness of more than one year. While it may be true that, following the reasoning in *Bugeja,* current pension payments helped to prevent possible disruption of municipal functions and thus avoided the possible expenses of reorganizing a municipal work force which might be necessary if the payments were not made, this reasoning could be applied to most of the wages and salaries paid by the city to its employees. For example, inability to pay wages to sanitation workers for a month or two would result in layoffs, and the consequent breakdown for an extended period of orderly garbage disposal could have adverse effects upon the health of the city's citizens lasting for several years. If we could exempt ordinary periodic pension payments on the theory that their usefulness outlives the fiscal year when they are made, we could

do this with almost all of the city's expenditures, and the constitutional restriction would be meaningless. Therefore, paragraph 42-a is without a rational basis and is arbitrary. There is a substantial difference between the one-time funding of pension obligations while means of obtaining additional revenue were worked out which happened in *Bugeja,* or the one bond issue to pay judgments in *Cherey,* and the continuing evasion of the constitutional tax limit contemplated here.

We note that, in both *Cherey* and *Bugeja,* serial bonds were actually issued. Thus, there was an important factor not present in this case, i.e., maintaining the full faith and credit of the investment community in the obligations of municipalities. These cases were not based on paragraph 42-a under which bonds cannot be issued.

We are aware of the temporary difficulties encountered by the city. Nevertheless we must consider the constitutional right of the taxpayers of the City of Buffalo not to be deprived of their property without due process. The citizens of the State of New York, in establishing a constitutional tax limit of 2% for operating expenses, presumably decided that this was the maximum tax which could be levied on real property without becoming oppressive, and it may not be circumvented by legislation.

Although we find the statute unconstitutional, the fact is that the city has relied on the additional taxes which it was able to impose because of the statute, and has spent the revenues derived thereby. In *Lemon* v. *Kurtzman* (411 U. S. 192, 199, 207), the Supreme Court affirmed a District Court decision (348 F. Supp. 300) permitting the State of Pennsylvania to make payments to nonpublic sectarian schools for services rendered prior to the date the law providing for such services and payments was found unconstitutional. The court said that "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity." The court, speaking of the consequences should State officials decline to act under a statute until it had been tested in court, added that "governments must act if they are to fulfill their high responsibilities. * * * Appellants would have state officials stay their hands until newly enacted state programs are 'ratified' by the federal courts, or risk draconian, retrospective relief should the legislation fall. In our view, appel-

lants' position could seriously undermine the initiative of state legislators and executive officials alike.''

Precisely the same considerations are present in this case. The city administration relied upon the statute in preparing its budget and to mandate repayment of amounts illegally collected in the past would place an impossible burden upon it and, in any event, it would be liable only for those taxes paid under protest. However, the city erred in excepting that part of the tax levy which provided for pension and retirement payments from the constitutional limit in preparing its budget for 1971–1972.

The judgment should be reversed and plaintiffs granted judgment declaring paragraph 42-a of subdivision a of section 11.00 of the Local Finance Law unconstitutional insofar as it excludes the City of Buffalo's future annual requirement for pension and retirement liabilities from the tax limit provided in sections 10 and 11 of article VIII of the State Constitution.

Goldman, P. J., Del Vecchio, Witmer and Cardamone, JJ., concur.

Judgment unanimously reversed on the law with costs and judgment declared in favor of plaintiffs in accordance with opinion by Moule, J.