Samuel L. Green, J.
This is an action brought in the Small Claims Court of the Buffalo City Court for moneys had and received. A nonjury trial was held on the 5th day of March, 1975. Subsequently, on the 26th day of March, 1975, this court ordered the parties herein to appear before me on the 2nd day *850 of April, 1975, for the purpose of offering additional proof as to the amount of damages and additional argument on the questions of law involved.
The plaintiff is a resident and taxpayer of the City of Buffalo. The defendant, City of Buffalo, is being sued for a refund of plaintiffs alleged overpayment of real property taxes imposed for the year commencing July 1, 1973, and ending June 30, 1974.
Prior to the trial in Small Claims Court, the defendant, City of Buffalo, moved to dismiss the matter for want of jurisdiction of this court. The Honorable William J. Ostrowski, a Judge of the City Court of Buffalo, denied the motion by order dated February 26, 1975, and directed that this action be scheduled for trial in the Small Claims Court.
At the trial, but before the commencement of testimony, the defendant again moved for dismissal on the same grounds. I agreed with my colleague, Judge Ostrowski, that the sections of law relied upon by the defendant did not apply in the case at bar and once again, denied defendant’s motion.
The plaintiff bases his claim for refund of overpayment of taxes on the so-called Hurd decision (Hurd v City of Buffalo, 41 AD2d 402, affd 34 NY2d 628). In that case, the Appellate Division, on May 18, 1973, declared paragraph 42-a of subdivision a of section 11.00 of the Local Finance Law unconstitutional insofar as it excluded the City of Buffalo’s future annual requirement for pension and retirement liabilities from the tax limit provided in sections 10 and 11 of article VIII of the State Constitution. This was later affirmed by the Court of Appeals.
The uncontroverted testimony of the plaintiff herein is that on or about July 31, 1973, he was billed by the City of Buffalo, for taxes owing for the year July 1, 1973 to June 30, 1974; that he paid same; that there was included in said amount the unconstitutionally imposed sum of $112.10; plaintiff paid total amount billed under protest; that he made such protest at the time of payment and his receipt was so marked; that subsequently on September 12, 1974, he reiterated his position and protest by letter to the City of Buffalo declaring therein his intent to recover the overpayment.
The plaintiff does not take issue with the assessed valuation of his property, but is solely concerned with recovering the *851 amount of the unconstitutionally imposed portion of his tax bill.
The defendant city has not challenged the fact of plaintiff’s protest. It concedes that prior to the Hurd decision, plaintiff’s protest would have been sufficient to require a refund of the overpayment. Nevertheless, it is defendant’s contention that once having adopted the nonretroactivity doctrine, the Court of Appeals rendered the time-honored vehicle of protest impotent and effectively barred recovery of overpayment notwithstanding timely protest. As proof that such is the conclusion to be drawn, defendant points out that the Court of Appeals cited in its decision the case of Lemon v Kurtzman (411 US 192), wherein the nonretroactivity doctrine is discussed at some length. However, the plaintiffs in that case were not seeking to have restored to them moneys they had paid, but rather they challenged payments made by the State to third parties. Not only did that case not involve an action for refund of overpayment of taxes, it also did not involve a protest. To that extent, it is not relevant to the case at bar.
Nevertheless, I feel constrained to quote here a portion of that decision quoting an earlier Supreme Court decision for whatever guidance it may provide herein. "Our holdings in recent years have emphasized that the effect of a given constitutional ruling on prior conduct 'is subject to no set "principle of absolute retroactive invalidity” but depends upon a consideration of "particular relations * * * and particular conduct * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality”; and "of public policy in the light of the nature both of the statute and its previous application.” ’ ” (Lemon v Kurtzman, supra, pp 198-199.)
In addressing myself to these considerations, I find that it has long been the law in the State of New York that illegal taxes, voluntarily paid are not recoverable but that illegal taxes involuntarily paid are recoverable. In discussing the reasoning behind this rule, the Court of Appeals in Mercury Mach. Importing Corp. v City of New York (3 NY2d 418), recognized the problem of municipal finance. "If no protest has been lodged, it is generally assumed that taxes paid can be retained to meet authorized public expenditures, and financial provision is not made for contingent refunds. Such *852 amounts may be considerable in case of highly productive taxes, paid without protest, that are eventually held to have been levied illegally.” However, "where protest has been interposed, the municipality is notified that it may be obliged to refund the taxes and is required to be prepared to meet that contingency” (p 426).
The city argues that because of the uncertainty of the outcome of litigation, it relied upon the statute to collect its taxes. However, it is precisely because of that uncertainty that plaintiff chose to pay under protest. As in Mercury Mach, (supra, p 429) plaintiff herein "did not pay these taxes as a gracious gesture; they were paid for the reason that there was real uncertainty whether the taxes * * * would be upheld in the courts.” The plaintiffs in Mercury did not recover because they had failed to meet "the requirement of protest” (p 430).
On each of the points of consideration as set forth in Kurtzman (supra), the balance seems to be in favor of plaintiff. Moreover, the Hurd decision itself is not, upon inspection, a clear departure from the earlier Mercury decision with respect to the effect of protest. Indeed, Justice Moule recognized the viability of protest in stating that the city "in any event * * * would be liable only for those taxes paid under protest.” (Hurd v City of Buffalo, 41 AD2d 402, 406, supra.)
While I am mindful of the ramifications of this decision, it is my opinion that in enunciating the nonretroactivity doctrine, neither the Appellate Division nor the Court of Appeals summarily annulled or abrogated the ancient right of the citizens of this State who, recognizing their obligation as citizens to pay taxes, choose an orderly way to meet that obligation while objecting to a denial of their rights.
The defendant city has also urged that since the plaintiff did not attempt to enjoin it from collecting taxes during the period of time between the Appellate Division and Court of Appeals Hurd decision, he is now barred from recovery. Defendant relies upon Lemon v Kurtzman (411 US 192, supra) to support this argument. The facts of that case are wholly distinguishable from the instant case.
It is not claimed that the plaintiff herein was a party to the action brought by Bradley Hurd to declare the statute unconstitutional. Had he been, he might properly have sought an injunction. Nor is plaintiff attempting to have third parties *853 who accepted moneys from the city and disbursed those moneys in reliance upon the statute, return the money to the city as was the case in Kurtzman. This is purely and simply a matter between the plaintiff and the city. Was plaintiff, therefore, required to bring an independent and duplicative action?
Confronted by the same question, the Court of Appeals said in Adrico Realty Corp. v City of New York (250 NY2d 29, 43): "The plaintiff, to enforce its rights, elected to pay the tax and thus relieve its property from such lien, and then to institute action to recover the amount it was obliged to pay, instead of commencing a proceeding to set aside the tax. We think the defendant is not in a position to complain because the plaintiff elected to pursue the former instead of the latter remedy”.
■ Had plaintiff elected to pursue an action for injunction, both he and the defendant would have been exposed to a lengthy, complex and costly procedure which, if successful, might have resulted in the wheels of government grinding to a halt or which, if unsuccessful, would have left the plaintiff with no alternative other than protest. The courts have long since continually discouraged unnecessary or multiplicatous lawsuits. To require such a suit as a prerequisite for his recovery now would not only be at odds with such discouragement but would additionally be oppressive to all concerned.
The plaintiff herein was faced with a tax bill, part of which was unconstitutionally imposed and the nonpayment of which, rendered his property subject to a lien. As a conscientious citizen, he paid his bill while preserving his rights via the vehicle of protest, at the same time protecting his property against encumbrance. By so paying his taxes under protest, plaintiff "waive[d] no right * * * he [did] no wrong, and create[d] no embarrassment to the municipality or officer taking his money”. (People ex rel. Warren v Carter, 119 NY 557, 560.)
In view of the foregoing, it is the order of this court that the plaintiff, Arthur O. Pellnat, have judgment against the defendant, City of Buffalo, in the amount of $112.10.