In the Matter of the CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., et al., Respondents, v ARTHUR LEVITT, as Comptroller of the State of New York, Appellant.

NEW YORK PUBLIC INTEREST RESEARCH GROUP, INC., et al., Respondents, v STANLEY STEINGUT, as a Member of the New York State Assembly and Majority Leader of the New York State Assembly, et al., Appellants.

Third Department, May 11, 1976

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon, Ruth Kessler Toch* and *Franklin K. Breselor* of counsel), for Arthur Levitt and others, appellants.

*Paul, Weiss, Rifkind, Wharton & Garrison (Edward N. Costikyan* of counsel), for Stanley Steingut and another, appellants.

*James W. Roemer, Jr.,* for Civil Service Employees Association, Inc., and another, respondents.

*Martin Garbus* and *Dennis A. Kaufman* for New York Public Interest Research Group, Inc., and another, respondents.

LARKIN, J. The basic question in both of these cases is whether chapter 460 of the Laws of 1975 violates section 6 of article III of the New York State Constitution. In the CSEA case, Special Term declared chapter 460 to be unconstitutional insofar as it (a) increased allowances for certain legislative officers in excess of the allowances provided by chapter 992 of the Laws of 1974, and (b) provided allowances for new legislative offices for which no allowances were authorized, and directed the Comptroller to obtain restitution of the amounts found to have been unlawfully paid. In the PIRG case, Special Term granted judgment declaring that all the allowances and any authorizing legislation were illegal and unconstitutional, and directed the defendant legislators to repay allowances paid to them pursuant to chapter 460 of the Laws of 1975.

Section 6 of article III of the New York State Constitution provides, so far as is relevant herein, as follows: "Each member of the legislature shall receive for his services a like annual salary, to be fixed by law. He shall also be reimbursed for his actual traveling expenses * * *. *Any member, while serving as an officer of his house or in any other special capacity therein* or directly connected therewith not hereinbefore in this section specified, *may also be paid and receive, in addition, any allowance which may be fixed by law for the particular and additional services appertaining to or entailed by such office or special capacity. Neither the salary of any member nor any other allowance so fixed may be increased or diminished during, and with respect to, the term for which he*

*shall have been elected,* nor shall he be paid or receive any other extra compensation" (emphasis supplied).

Section 19 of chapter 460 of the Laws of 1975, effective August 9, 1975, provided for the payment to enumerated officials of both houses of the Legislature, of "[a]llowances for the particular and additional services" rendered. Although these allowances are popularly referred to as "payments in lieu of expenses" or "lulus", they are actually compensation for services rendered and taxable as such. Chapter 460 was, by its own terms, "immediately applicable" to the legislators whose terms had begun on January 1, 1975 and were to terminate on December 31, 1976. The legislators enacting chapter 460 were to be the recipients of the allowances provided for therein.

The respondent CSEA claims that section 6 of article III of the New York State Constitution prohibits the fixing by the present Legislature of its own compensation for special services in excess of the level established by the previous Legislature. The respondent PIRG contends that all of the allowances authorized by the present Legislature for additional services were constitutionally prohibited. Additionally, respondents argue that the Legislature is prohibited from creating new positions during its term and providing for special additional allowances to members who fill such offices. The essence of the argument of the appellants is based upon the fact that appropriation acts have only an annual duration and, when not re-enacted in subsequent years, appropriations cease to exist at the end of the fiscal year in which they were enacted. It is argued that on January 1,1975, when the members of the current Legislature took office, there was no provision in effect for special allowances for the present term and, therefore, the allowances fixed by chapter 460 of the Laws of 1975 fixed the allowances for the first time for this term. Accordingly, appellants contend that the initial fixing of allowances for a term of office is neither an increase nor a decrease.

We conclude that the argument of the appellants that chapter 460 of the Laws of 1975 can be harmonized with section 6 of article III of the Constitution must be rejected.

The present version of section 6, effective January 1, 1948, essentially providing for the fixing of salaries and allowances by law but proscribing any increases during the Legislature's elected term (see NY Legis Doc, 1946, 169th Sess, vol 4, No. 31, pp 169-171) is similar to the constitutional or statutory

prohibitions in most States which are designed "to remove * * * the temptation to put their * * * personal interests above the public welfare in determining the amount of their salaries" *(City Council of Newburyport v Mayor of Newbury- port,* 241 Mass 575, 577; see 67 CJS., Officers, § 95). Changes in compensation during terms of office are not favored *(Cannon v Taylor,* 87 Nev 285, mod 88 Nev 89). A statute which confers upon members of a legislative body the power to fix their own salaries will be strictly construed, and, unless the statutory language is clear and unmistakable, such power will be denied because of its extraordinary character (4 McQuillin, Municipal Corporations [3d ed], § 12.178).

We must, therefore, examine section 6 of article III of the New York State Constitution in the context of a traditional judicial view that changes in compensation, particularly those by a legislative body empowered to fix its own remuneration, should be carefully scrutinized. Of considerable significance is the fact that no distinction is made therein between "allow- ances" for additional services,such as are in issue herein, and "salaries", either as to the manner in which they are to be fixed or as to the prohibition against their alteration during the term.

The salaries of all members of the Legislature are fixed by section 5 of the Legislative Law at $23,500 per annum plus a per diem allowance of $40. Since the time of the adoption of the present version of section 6 of article III of the Constitu- tion, all amendments to section 5 of the Legislative Law have carefully restricted the effective date so that the increase in salaries would not be effective as to members of the Legisla- ture who enacted the statute (L 1973, ch 386; L 1966, ch 809; L 1961, ch 946; L 1955, ch 2; L 1954, ch 314). As an example, although the last amendment (L 1973, ch 386) was approved on May 31, 1973, it was not effective until January 1, 1975, at which time the terms of the enacting legislators would have expired and a new Legislature would be in session.

Implicit in the argument of the appellants is that the allowances for additional services should be treated differently from salaries in regard to applicability to the enacting legisla- tors. Although, as appellants argue, the appropriations for the allowances expire at the end of the fiscal year for which they were enacted, a similar result could easily be achieved with respect to salaries. All that would be necessary would be for the Legislature to repeal section 5 of the Legislative Law and

thereafter to appropriate salaries on the basis of a yearly enactment rather than by statute. Then, by a logical extension of the reasoning of the appellants, the salary appropriated would be a completely new fixing by law rather than a salary already fixed which, contrary to the express prohibition of section 6 of article III, is being increased during the term of the enacting legislators. We believe that such result, in regard to either salaries or allowances, is unconstitutional. To conclude otherwise would exalt form over substance and allow the Legislature to accomplish indirectly through legislative procedure what is directly prohibited by the Constitution.

To further demonstrate the dangers of accepting the basic premise of the appellants, we note that the allowances for additional services which are in issue herein are appropriated each year, not each legislative term. To accept the argument in the instant cases that chapter 460 of the Laws of 1975 is an "initial fixing", by logical extension we would be constrained to view a similar appropriation for 1976, perhaps with additional allowances for the same office or special capacity in sums greater than those appropriated for 1975, as a permitted initial fixing. While in form such an appropriation might be an initial fixing, in substance the legislators would have voted themselves an increase during an elected term over an amount they had already fixed for themselves. To accept one initial fixing we would have to accept a second. To accept one appropriation containing increases in allowances, or salaries for that matter, during the elected term, we would have to authorize a second. The violence to section 6 of article III which would be caused by our taking such an approach is obvious.

The most persuasive argument advanced by the appellants is based upon the fact that the allowances in question are voted primarily to compensate members serving in various capacities on committees which are newly formed during each legislative session. Appellants argue that in affirming the instant cases we would effectively bar the Legislature from reorganizing itself during its current session, bar it from eliminating any offices or creating any new ones for its own session, require it to forecast the organizational desires of succeeding Legislatures and to provide for compensation of unknown future officers heading committees yet to be formed in advance of their creation, while reimbursing others for services no longer desired or actually rendered. Although

these arguments do have considerable merit, the picture of the actual change from session to session implicit therein is somewhat exaggerated. Standing committees are formally established each year, but as a matter of substance they are for the most part continuous bodies which are expected to and do reappear year after year in essentially the same form. The appendix for respondent PIRG notes that since 1949, only six new substantive Senate standing committees and only two Assembly standing committees have been created. Name changes and consolidations have provided the most changes.

As to those changes in the Legislature and its committees and subcommittees which do occur from session to session, we agree that our holding herein will impose the burden upon a preceding legislative session of predicting the needs of the incoming Legislature in order that those members thereof performing additional services may receive adequate compensation. This burden, however, must be weighed against the dangers, recognized by the courts *(Cannon v Taylor,* 87 Nev 285, mod 88 Nev 89, *supra; City Council of Newburyport v Mayor of Newburyport,* 241 Mass 575, *supra)* and our Constitution (NY Const, art III, § 6), inherent in allowing a legislative body to increase the compensation of its members during their term of office. For this reason, also, we cannot accept the argument that even if we should not allow an incoming Legislature to increase the allowances for positions which remain the same from term to term, we should allow an "initial fixing" of an allowance for a newly created position. The dangers inherent in this approach are obvious; an incoming Legislature with, for example, a new majority party, could circumvent section 6 of article III by the simple device of abolishing former positions and creating new ones. Such a result cannot be countenanced. Nothing said herein, of course, prevents the Legislature from, at any time, abolishing any office of its creation, thus eliminating the need for an attendant additional allowance (48 NY Jur, Public Officers and Employees, § 229). The abolition of an office is completely distinguishable from the diminution of compensation for an exisiting office, which is prohibited by section 6 of article III.

The Attorney-General correctly notes that there are several cases supporting the proposition that an initial fixing of compensation for the term of a public officer does not constitute an increase or decrease in compensation (Ann 144 ALR 685; 67 CJS, Officers, § 95, subd [f]; *Dennis v Rich,* 434 SW2d

632 [Ky]; *Arnold v Sullenger,* 200 Cal 632). In all of these cases, however, two significant facts stand out, which distinguish them from the present case: (1) there was a failure to fix or appropriate a mandatory salary or fee, and (2) the salary-fixing body was not setting its own compensation, but that of a third party. These cases are not persuasive in the cases at bar, where the Legislature set its own allowance and where allowances are permissive, so that there was no duty on the prior Legislature to fix allowances. More in point is *City Council of Newburyport v Mayor of Newburyport* (241 Mass 575, *supra),* which involved city council members who voted salaries for themselves where no salary was established at the time any of them took office. The enabling statute was permissive, stating merely that the council may establish a salary, "but no increase therein shall be made to take effect during the year in which the increase is voted" (p 576). The court held that a proper construction of the statute did not authorize members of the council to take the initiative in establishing salaries for themselves; rather, this had to be done by the preceding city council. Noting the permissive nature of the statute and the unusual grant of power for a body to fix its own salaries, the court stated that to establish by original action a salary where previously none whatever existed is to grant an increase. Similarly, the establishment of the allowances herein is a matter solely within the province of the previous Legislature.

We must now address our attention to the question of whether repayment of the 1975 allowances is required. If repayment is required, it would seem that the entire 1975 allowance must be repaid, as was ordered in the PIRG case, rather than merely the excess over the 1974 allowances, as was ordered in the CSEA case. We have concluded that the entire chapter 460 of the Laws of 1975 is unconstitutional and the 1974 allowances could not set a base for 1975, since by their own terms the 1974 allowances expired at the end of 1974.

While the general rule is that a public officer receiving public moneys without right may be charged with the duty of restitution at the insistence of a taxpayer, although he received them without fraud *(Stetler v McFarlane,* 230 NY 400), restitution of moneys received under a statute subsequently declared to be unconstitutional is not always required (see *Lemon v Kurtzman,* 411 US 192; *Hurd v City of Buffalo,* 41 AD2d 402, affd 34 NY2d 628). In the instant case, we have not

held that the legislators were not entitled to the allowances, but rather have concluded that the particular payments were improperly authorized. When the constitutional harm of allowing these payments is weighed against the reliance upon them by the individual legislators, based upon years of practice and opinions of the Attorney-General issued in 1961 and 1975, the equitable interests of fairness and justice mandate a reversal of so much of the orders and judgment appealed from as require a return of allowances heretofore paid (see *Lemon v Kurtzman, supra; Cannon v Taylor,* 88 Nev 89, modfg 87 Nev 285, *supra).* The record fails to show conclusively when all payments under chapter 460 of the Laws of 1975 were made, particularly whether any moneys were actually paid subsequent to the date the legal proceedings were commenced. If any allowances were paid after this time, the equities discussed above would no longer support an exception to the general rule requiring recovery of public moneys improperly received.

The order and judgment entered November 12, 1975 should be modified, on the law and the facts, by reversing so much thereof as requires the appellants to make restitution of allowances received pursuant to chapter 460 of the Laws of 1975, and, as so modified, affirmed, without costs.

The order and judgment entered February 13, 1976 should be modified, on the law and the facts, by reversing so much thereof as (1) requires the appellants to make restitution of allowances received pursuant to chapter 460 of the Laws of 1975, and (2) awards plaintiffs reasonable attorney's fees, and, as so modified, affirmed, without costs.

KOREMAN, P. J., MAHONEY, MAIN and HERLIHY, JJ., concur.

Order and judgment entered November 12, 1975 modified, on the law and the facts, by reversing so much thereof as requires the appellants to make restitution of allowances received pursuant to chapter 460 of the Laws of 1975, and, as so modified, affirmed, without costs.

Order and judgment entered February 13, 1976 modified, on the law and the facts, by reversing so much thereof as (1) requires the appellants to make restitution of allowances received pursuant to chapter 460 of the Laws of 1975, and (2) awards plaintiffs reasonable attorney's fees, and, as so modified, affirmed, without costs.