Marshall E. Livingston, J.
Plaintiffs, Waldert, Jones, Powers and Felice, taxpayers in the City of Rochester and the City School District of Geneva, New York, respectively, are before me asserting that they are entitled to summary judgments declaring that chapter 349 of the Laws of 1976 is unconstitutional and void. They assert that it is in violation of section 10 and subdivision (b) of section 11 of article VIII of the New York State Constitution and the equal protection and due process clauses of sections 6 and 11 of article I of the New York State Constitution and of the Fourteenth Amendment to the United States Constitution.
Defendants and the other school districts appearing amicus curiae urge that chapter 349 of the Laws of 1976 is within the power of the Legislature in order to provide what in substance amounts to emergency relief for these defendants.
In the Waldert case it is claimed that the 1976-1977 Rochester budget and tax levy for payments of operating funds, pension and retirement liabilities is unauthorized by article VIII (§ 11, subd [b]) of the New York State Constitution and constitutes an evasion and violation of section 10 of article VIII of said Constitution because it exceeds the 2% tax limit of the average full valuation of taxable real estate by 1.4%. Plaintiff contends that retirement and pension costs are not legally excludable from the 2% tax limit, pursuant to chapter 349 of the Laws of 1976, and further, that as a result, she has paid excess tax levies of $1,722.54 under protest, which she is entitled to have refunded.
Action No. 2 (Jones) is in practically the same posture as Waldert, except that it concerns the budget of the City School District of Geneva, New York and the City School Districts of Binghamton, New York, and Corning, New York, which were by my order joined amicus curiae. Plaintiffs here also seek recovery of alleged overpayments made by them in protest.
At the outset of my discussion of the merits of these motions for summary judgment, I should for purposes of clarity outline in substance what elements control the fixing of school budgets in New York State so that taxes can be assessed and paid in order to pay the bills estimated thereby.
Outside of New York City there are but two general types of school budget financing. First, city school districts with less *474 than 125,000 population, including those portions of coterminus areas in adjoining towns and counties, and the city school districts of more than 125,000, but less than 1,000,000 population (see Education Law, arts 51, 52). Second, the balance of the districts comprise the common, union free, central and central high school districts.
The first group are governed by elected boards of education which establish the budget for school purposes within the limitations proscribed by law in relation to the average assessed valuation of real property in the school districts with a population of less than 125,000. According to the Division of Municipal Research of the Department of Audit and Control in Albany, which I contacted sua sponte, there are about 57 cities in this category. The cities of over 125,000 population are Buffalo, Rochester, Yonkers and Syracuse. These cities, known as the "big four”, have consolidated budgets which include the school expense. The school part of the budget is prepared by each board of education, approved by it and also by each city council.
The second group of common (27), union free (173) and central (479) school districts total 679. This approximates 740 school districts in the State, not including New York City, which is in a special category. The budgets of the second group are all voted on, not by the respective school boards, but by the voters of the common, union free or central school districts (see Education Law, §§ 1805, 1906, 2004).
Thus it is noted that cities with less than 125,000 population and those with more than 125,000 but less than 1,000,000 population are presumably bound by constitutional limitations in their power to tax, whereas, the 679 common, union free and central school districts are not limited constitutionally in their power to tax because each school budget is passed on at an annual referendum of each school district, and either approved or disapproved by the voters of each district. If such a budget is disapproved by the voters, a revision thereof is resubmitted until district voter approval is obtained. These budgets in many instances include amounts for retirement, pension and Social Security benefits which exceed the alleged constitutional limitations proscribed by article VIII of the New York State Constitution. The article VIII limitations apply only to city school districts of over and under 125,000, or those districts within a city (e.g., Hendrick Hudson Central School District of Cortlandt and Westmoreland Central School *475 District). However, sections 2701-2706 of the Education Law provide relief to any school district coterminus with or partly or wholly within a city of less than 125,000. A referendum may be had and the voters may increase their constitutional real estate tax limitation proscribed by section 10 of article VIII. This is substantially what the voters of the central, union free and common school districts do every year when they approve their budgets.
Incidentally, in the affidavit of Robert Menzie, formerly of the Citizens Tax League, before me, there is an enumeration of school districts where such referenda have been held since 1967. It shows that the constitutional tax limit referendum provided for by article 54 of the Education Law has been used by some 28 school districts out of about 64 eligible to increase the tax limit by one quarter of 1%. In the 28 districts where this procedure was followed, 24 districts defeated the proposition to raise the limit a total of 35 times. Four districts approved the referendum.
Because both defendants and the parties joined amicus curiae raise the same defenses and make similar arguments, I will deal with the six defenses outlined by the City of Rochester and dispose of all motions accordingly.
The City School District of Geneva in its answer did allege an affirmative defense relating to its emergency situation and the reality thereof as well as the necessity for relief which requires the upholding of the constitutionality of chapter 349 of the Laws of 1976 as a valid exercise of its police power. This affirmative defense will be dealt with later.
No answer as such has been filed by the City of Rochester because this is a motion for summary judgment; however, in his affidavit answering plaintiffs motion, the Corporation Counsel lists six defenses to plaintiffs complaint. These defenses are (1) that the emergency city and school district relief act is a valid exercise of the State’s power to set periods of probable usefulness; (2) that plaintiff has no actual and justiciable controversy and no standing; (3) that the tax act is a valid exercise of the State’s plenary power to tax; (4) that the emergency act is a valid exercise of the State’s emergency powers; (5) that the phrase "for city purposes” in section 10 of article VIII does not include school purposes; and (6) section 10 of article VIII of the New York Constitution violates the Federal Constitution.
*476 THE VALIDITY OF THE EMERGENCY CITY AND SCHOOL DISTRICT RELIEF ACT (L 1976, ch 349)
In Hurd v City of Buffalo (41 AD2d 402, affd 34 NY2d 628) section 11.00 (subd a, par 42-a) of the Local Finance Law was challenged. Paragraph 42-a was added by chapter 1105 of the Laws of 1969, and amended by chapter 129 of the Laws of 1970 to include a city the size of Buffalo, New York.
"[T]he question is whether the levy for pension and retirement payments was excepted from the constitutional tax limitation because of subdivision (b) of section 11 of article VIII of the Constitution and paragraph 42-a of subdivision a of section 11.00 of the Local Finance Law which read: 'All or any part of the amount payable by a city with a population of more than two hundred seventy-five thousand but less than one million inhabitants according to the last federal census * * * for pension or retirement liabilities including but not limited to the employers’ contribution to the New York state employees’ retirement system, the New York state teachers retirement system and the social security fund of the New York state social security agency, three years, provided, however, that the cost thereof for any fiscal year shall be provided by direct budgetary appropriation for payment in such fiscal year’” (emphasis added; Hurd v City of Buffalo, 41 AD2d 402, 403-404, supra).
Hurd held that section 11.00 (subd a, par 42-a) was unconstitutional. The Per Curiam opinion of the Court of Appeals (34 NY2d 628, 629) said in part: "The constitutional provisions involved in the present case, on the other hand, do involve a unified and interdependent plan to control the taxing and debt-contracting power of the subdivisions of the State. A disregard of this overall purpose by accepting specious devices to evade them would nullify their effect. Most important, the overall purpose is evident from within the four corners of the Constitution as well as the constitutional history which brought them into being. The plan made express in the Constitution, and sustained by the historical antecedents reflecting purpose, must therefore be treated as a limitation of the exercise of the powers to the extent, and perhaps only to the extent, that measures to evade are palpably in violation of the plan and purpose. That is the situation in this case.”
In my view chapter 349 of the Laws of 1976 attempts to rectify the defects found in section 11.00 (subd a, par 42-a) of *477 the Local Finance Law. The legislative findings, which are section 1 of the chapter, frankly concede that its purpose is to avoid the impact of Hurd. The Legislature in ascribing authority for the enactment of chapter 349 labels it an emergency measure "to provide for temporary solutions to these fiscal problems pending comprehensive revision of article eight of the constitution” (L 1976, ch 349, § 1).
The legislative findings state that a proposal to constitutionally amend article VIII (§ 11, subd [b]) so as to authorize the exclusion of retirement, pension and Social Security benefits from the tax limit was passed by the Legislature in 1974 and 1975. In the 1975 general election, however, the proposed constitutional amendment was defeated.
Now in 1977 the people will decide if we shall have a Constitutional Convention in 1979. If one is held, the problem of amending article VIII will be examined. The constitutional tax limitation, defendants argue, should, therefore, be held in abeyance.
Hurd (supra) said section 11.00 (subd a, par 42-a) of the Local Finance Law was unconstitutional, and no matter then what kind of glasses one looks through, chapter 349 of the Laws of 1976 presents the identical problem, and Hurd must control. Chapter 349 of the Laws of 1976 I find is unconstitutional.
The City of Rochester, in its affidavit in opposition, in effect adopts the argument of Judge Jones, concurred in by Judge Rabin, in the dissent in Hurd v City of Buffalo (34 NY2d 628, supra). The rest of the court, however, specifically laid this argument to rest (supra, p 630).
THE STATE REAL PROPERTY TAX ACT (L 1976, ch 349, § 3)
Defendants assert that the State Real Property Tax Act enacted by section 3 of chapter 349 of the Laws of 1976 presents no justicable controversy or basis for a declaratory judgment until section 2 (Emergency City and School District Relief Act) has been declared unconstitutional by the Court of Appeals, pursuant to section 7 of said act. This is not so. The purpose of a declaratory judgment is to avoid pitfalls, either present or prospective, and certainly here, if the emergency act is held as unconstitutional, then phase two of similar cases would be another go round with the State Real Property Tax Act as the subject of other lawsuits. The second defense is *478 without merit in my judgment (see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.02).
The city’s third defense urges that the State Real Property Tax Act part of chapter 349 is a true State tax and not a local tax, as plaintiffs contend. While it is true that this tax was enacted by the Legislature and not by a local subdivision of government, nevertheless, it was enacted for the benefit of eligible municipalities such as the defendants here.
With regard to requests by an eligible municipality for State aid payments, section 3 of the State Real Property Tax Act provides in part: "Every such request shall declare that a necessity exists for the payment of such state aid based upon an anticipated insufficiency of revenues to be raised by the maximum tax on real property imposed within constitutional tax limitations actually in effect at such time.”
In other words, if the emergency tax in the first part of chapter 349 of the Laws of 1976 is unconstitutional, then, based upon an anticipated shortage to be raised by the maximum tax on real property as imposed "within constitutional limitations * * * in effect at that time”, section 7 of the State Real Property Tax Act comes into play and the taxes are raised by the State Comptroller and collected, but without regard to any constitutional limitations. Again under the principles set down in Hurd, the State Real Property Tax Act under chapter 349 of the Laws of 1976 is prospectively unconstitutional, and I so declare it.
THE VALIDITY OF THE EMERGENCY ACT UNDER THE STATE’S EMERGENCY POWERS
The fourth defense asserts that chapter 349 of the Laws of 1976 is a proper exercise of power under the theory of an emergency, justifying the suspension of the constitutional limitations in a particular area under the police power of the New York State Constitution (art III, § 25). However, that section is to insure continuity of government in emergencies caused by "enemy attack or by disasters (natural or otherwise)”.
Despite the defendants’ showing of emergency (and in this respect, the first affirmative defense of the defendant Geneva City School District is most explicit), I cannot construe the situation to be a "disaster (natural or otherwise)” in view of the fact that the voters State-wide in 1975 turned down the *479 constitutional amendment which would have rendered moot this whole problem. As I mentioned earlier, the voters of some 24 cities or districts under constitutional limitations turned down propositions to increase the respective tax limitations on some 35 separate occasions. This emergency, dire as it in effect has been characterized and in existence for about 10 years now, does not in my judgment warrant a status to bring it within section 25 of article III of the New York State Constitution.
The State Legislature believed chapter 349 of the Laws of 1976 justified such a status, as do the defendants here and as did the defendant in Hurd, but the majority of the people of the State did not so deem it in 1975, nor in the other 24 city districts above referred to.
In this regard I do not deny that this situation may well lead to a countdown on the retirement, pension and Social Security benefits status of our public employees, but I say that a constitutional amendment is necessary to accomplish the purpose defendants urge.
Defendants assert that Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y. (40 NY2d 731) is not in point here. I disagree. The principle involved there is the same as here, and as the court said (p 740): "The invocation of the emergency clause in the State Constitution [art III, § 25] is of little avail. Its history and language bespeak the frigid years of the Cold War and the threat of nuclear decimation (Memorandum of Joint Legislative Committee on Interstate Cooperation, NY Legis Ann, 1963, p 221). Its purpose was to provide for a functioning and continuing government, even if many officers of the several branches of government and their quarters had been atomized in a nuclear Armageddon, free of the constitutional limitations. Most important, it refers only to the continuity of governmental operations in the direct sense. Obviously, it does not mean and may not mean that the Constitution is always suspended in every emergency in a world and life that is a succession of emergencies, natural and manmade.”
THE PHRASE "FOR CITY PURPOSES” AS USED IN SECTION 10 OF ARTICLE VIII
The fifth defense states that the phrase "for city purposes” in section 10 of article VIII of the Constitution does not include school purposes. This is not the situation. The tax levy *480 of the City of Rochester includes an amount for "general city purposes” and an amount for "school purposes”, which together make up the total tax levy. These categories include retirement and Social Security benefits for both city and school, which I hold are not excludable by virtue of the unconstitutionality of chapter 349 of the Laws of 1976.
The report by the Director of Finance of the City of Rochester, dated June 10, 1976, indicates that the tax levy for "city purposes” includes both the school and the city. This has long been the construction of the phrase (see Board of Educ. v Van Zandt, 234 NY 644, affg 204 App Div 856, 119 Misc 124).
The sixth defense argues that section 10 of article VIII of the New York Constitution violates the Federal Constitution, if the phrase "for city purposes”, as applied to cities of more than 125,000 population, is construed to include city and school purposes.
This defense does not apply to towns, common school, union free school, central school or central high school districts, as previously noted (see Education Law, §§ 1805, 1903, 1716, 1608). There the voters in the school districts have the power to approve or disapprove the budget. This is not so, however, in city school districts of less than 125,000, such as Geneva, Binghamton and Corning. Public hearings are held (Education Law, § 2517). The final budget, however, is prepared and adopted by a vote of the school board without ever being submitted to the voters (Education Law, §§ 2518, 2519). The same procedure is essentially followed in cities over 125,000 population, except there the school board may prepare a budget and may hold an informational hearing on it for the benefit of citizens. Then it is submitted to the city council, board of aldermen or whatever is the governing body of the city. The budget may be sent back for revision, but the final budget is worked out without any voter approval.
If section 10 of article VIII of the New York State Constitution is held to be in conflict with the Federal Constitution on the ground that there is no rational, articulate basis for the tax limits as they now exist, then this would deny equal protection because the classifications are arbitrary. For me to hold that this section is unconstitutional and in conflict with the Fourteenth Amendment would emasculate all of New York State’s tax and debt limits. This I am not about to do. The differences between the debt limits in school districts in *481 cities of over 125,000 and under 125,000 population represents a matter of public policy which was settled when the New York State Constitution was adopted by the people.
Therefore, I honor the statements made in the brief submitted by plaintiffs counsel in the Waldert action on pages 5 and 6 which say: "In no instance have we been able to discover a decision invalidating a constitutional provision of a state upon the ground that different limitations were enacted in the case of different classifications of municipalities or political subdivisions based on differences in population, location, area or other regions of local importance. To be sure 'if a state tax, it must be uniform all over the state. If a county or city tax, it must be uniform throughout such county or city’ (Township of Pine Grove v Talcott, 19 Wall. 666, 675). But mathematical symmetry between units of government is not required and would be unattainable. As was said in Magoun v Illinois Trust & Savings Bank, 170 U.S. 283, at page 296: 'There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classifcation for governmental purposes there cannot be an exact exclusion or inclusion of persons and things.’ ” (See Bell's Gap R. R. Co. v Pennsylvania, 134 US 232; People ex rel. Armstrong v Warden, 183 NY 223, 225-226; Chisena v Central High School Dist. No. 2 of Towns of Hempstead & North Hempstead, 136 NYS2d 598, 606-607). Thus the sixth defense in my opinion is not justiciable.
It is not necessary to reach the motion by plaintiffs, Jones et al., to strike the first affirmative defense of the Geneva City School District in its answer inasmuch as I have granted plaintiffs in both actions summary judgment declaring chapter 349 of the Laws of 1976 unconstitutional in violation of section 10 and subdivision (b) of section 11 of article VIII of the New York State Constitution and sections 6 and 11 of article I of said Constitution and of the Fourteenth Amendment to the United States Constitution.
Plaintiffs in the Jones action are respectively granted judgment for the amounts demanded in their amended complaint, together with interest.
Plaintiff Waldert is granted judgment in the sum of $1,727.54 with interest.