DAVID J. ANGELONE et al., Respondents, v CITY OF ROCHESTER, Appellant.

Fourth Department, February 20, 1980

---

## APPEARANCES OF COUNSEL

*Louis N. Kash, Corporation Counsel (Susan L. Hauser* of counsel), for appellant.

*David J. Angelone* respondent *pro se,* and for Mary J. Angelone, respondent.

## OPINION OF THE COURT

CARDAMONE, J. P.

This litigation results from the Court of Appeals holding in *Waldert v City of Rochester* (44 NY2d 831, modfg 61 AD2d 147) which directs the City of Rochester to refund property taxes it collected for the years 1976-1978 in excess of the 2% limitation in the State Constitution (NY Const, art VIII, § 10). The city's response to the *Waldert* directive was its enactment of Ordinance No. 79-307 entitled "An Ordinance Authorizing Refund of Unconstitutional Real Property Taxes Levied in 1976-77 and 1977-78". We hold that the ordinance is unconstitutional.

Briefly, by way of background, in 1973 we declared section 11.00 (subd a, par 42-a) of the Local Finance Law unconstitutional because it purported to exclude from the 2% tax limitation the city's liabilities for its employees' annual pension and retirement benefits (NY Const, art VIII; *Hurd v City of Buffalo,* 41 AD2d 402, affd 34 NY2d 628). For four tax years following the *Hurd* decision the City of Rochester continued to tax its property holders at a rate in excess of its constitutional tax limit. It did so pursuant to so-called "emergency" State legislation amending the Local Finance Law which, in effect, excluded certain operating expenses from the computation of the constitutional tax limit (L 1974, ch 496; L 1975, ch 325; L 1976, ch 349). These statutes and the taxes levied under them were the subjects of lawsuits brought in Erie, Monroe and Ontario Counties. In each instance the statutes were declared unconstitutional and overpayments, where made, were ordered restored to the taxpayers *(Waldert v City of Rochester,* 90 Misc 2d 472; *Jones v City School Dist. of City of Geneva,* 90 Misc 2d 472; *Bethlehem Steel Corp. v Board of Educ.,* 91 Misc 2d 258). Insofar as these judgments declared the subject legislation unconstitutional they were affirmed at the Appellate Division (61 AD2d 147) and at the Court of Appeals (44 NY2d 831). The Court of Appeals, however, modified our decisions in *Waldert* and *Jones* to permit taxpayers to claim refunds of taxes paid in excess of the constitutional limitation.

This precipitated the present litigation by plaintiffs, David J. and Mary Jane Angelone, who seek a refund for excess taxes paid during the fiscal years 1974-1975, 1975-1976, 1976-1977 and 1977-1978. Appellant city answered asserting as a defense the credit and procedures established by Rochester City Ordi-

nance No. 79-307 which was adopted on June 28, 1979. Plaintiffs later served an amended complaint seeking to have Ordinance No. 79-307 declared unconstitutional and then moved for summary judgment.

Plaintiffs' moving papers established facts not controverted by the city; that they had been subjected to excessive taxation in each of the years alleged amounting to $268.99 in 1974-1975; $337.20 in 1975-1976; $378.99 in 1976-1977 and $382.01 in 1977-1978, or a total overpayment of $1,367.19. Each payment had been made by plaintiffs under protest. Plaintiffs' exhibits also demonstrated—again, not controverted—that pursuant to section 2 of City Ordinance No. 79-307 the city had imposed a special levy in 1979-1980 to finance a refund of a city tax illegally levied in prior years. The amount of that levy is not reflected on the city's report to the State Department of Audit and Control; nor is it stated on the tax bills sent to resident taxpayers. However, by comparing plaintiffs' tax bill including the levy with a printout of their tax bill without the levy, it becomes plain that the special levy is $37.87 per thousand attributable for school purposes and $38.30 per thousand for city purposes. The total amount of the special levy is approximately $55,291,000. The tax margin shown in the city's report to the Comptroller reveals that the constitutional tax margin is $4,702,691. Including the special levy and assuming that it is subject to the 2% constitutional limitation results in the conclusion that the city has exceeded its constitutional tax margin by $50,589,309.

Special Term granted summary judgment to the plaintiffs declaring both the substantive and procedural provision of the ordinance unconstitutional. It also found plaintiffs entitled to reimbursement for all four tax years in question. From the judgment which grants plaintiffs summary judgment and declares that Ordinance No. 79-307 violates the New York State Constitution, the City of Rochester appeals.

We consider first the constitutionality of the ordinance. As a result of the Court of Appeals modification in *Waldert* directing a refund, the City of Rochester was faced with two problems. First, the inclusion of insurance and pension costs in the computation of the constitutional tax limit forced the city to reduce its maximum taxing power and to seek other methods of raising revenue. Second, the declaration that those taxpayers who paid their taxes under protest were entitled to refunds left the city with the prospect of substantial claims for

repayment. In response the city concocted a scheme of no little ingenuity. It decided to refund excess tax payments not only to those taxpayers who had the foresight to pay under protest, but to all the taxpayers on the city tax rolls. This, of course, greatly increased the amount of money needed to make the repayments and required the establishment of a substantial fund since the city estimated approximately 55 million dollars would have to be raised to fund the repayments. Under its 2% limit the maximum amount of taxes the city could collect in 1979 amounted to less than 69 million dollars. To alleviate this dilemma—cut costs by eliminating services or seek new sources of revenue from the taxpayers—the city enacted Ordinance 79-307. The ordinance declared the existence of an equitable claim against the city on behalf of all taxpayers and it also established a capital account from which repayments would be made. This special capital account was to be funded by an additional levy not included in the computation of the constitutional tax limit. No moneys were ever collected to fund the special capital account, however, because rather than making cash refunds the city merely credited each taxpayer with the amount due as a "refund". The "refund" was precisely the same amount stated on the tax bill as due the city as a result of the extra levy to fund the special capital account. Thus, since no taxpayer actually received a refund or paid any special levy, the amount of each tax bill was exactly what it would have been had there been no modification of *Waldert* by the Court of Appeals. Through this skillful legerdemain, the city completely nullified the Court of Appeals determination that those persons who paid their taxes under protest were entitled to a refund. By paying a refund to everyone the city ended up paying no one; or, as the city so aptly phrased it, "it robbed Peter to pay Peter". This ingenious plan, designed to confuse perhaps, was a solution that was not satisfactory to everyone as this lawsuit attests.

The city defends its action as being both constitutional and well within the powers granted to it. It argues that subdivision 5 of section 20 of the General City Law authorized it to pay refunds to all city taxpayers, including those who did not pay their taxes "under protest". Converting these claims to judgments, the city then cites Local Finance Law (§ 11.00, subd a, par 33) and *Cherey v City of Long Beach* (282 NY 382) as authority for its establishment of a capital account from

which the payment of these judgments, to be funded by a tax levy in excess of the constitutional limit, would be made. Subdivision 5 of section 20 of the General City Law authorizes a city "[t]o spend money for any public or municipal purpose; to pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it, but it shall have no power to waive the defense of the statute of limitations or to grant extra compensation to any public officer, servant or contractor." Although only those taxpayers who paid their taxes "under protest" are legally entitled to a refund, arguably the city would have authority under statute to return unconstitutionally assessed taxes to the taxpayers who paid them regardless of whether they had the foresight to pay "under protest." In enacting Ordinance 79-307, however, the city has done more than that and in so doing has enacted an ordinance that is in our opinion clearly unconstitutional.

For the four tax years between 1974 and 1978 the city collected taxes in excess of its constitutional limitation. The property holders who actually paid these excess assessments are the ones to whom the city owes a refund, i.e., they are the ones who hold the equitable or legal claims. Ordinance 79-307, however, grants refunds for tax years 1976-1977 and 1977-1978 to all taxpayers listed on the 1979-1980 tax rolls. It fails to distinguish between taxpayers who paid the excess taxes for both years, taxpayers who paid excess taxes for only one year and taxpayers who recently purchased property in the city and never paid an excess tax. Further, by using the 1979-1980 tax rolls the city has made no refund at all to those people who paid the illegal assessments, but have since moved from the city. At the same time the city has overpaid those taxpayers who now (1979-1980) own more expensive property or who own city property but did not own such property at the time the excess taxes were collected. Since the refunds in these latter cases are not based on an obligation owed by the city, they are, in whole or in part, unconstitutional gifts (NY Const, art VIII, § 1; *Matter of Antonopoulou v Beame,* 32 NY2d 126). Since the city has no power to make such gifts, and is in fact prohibited from doing so, Ordinance 79-307 authorizing this practice is itself unconstitutional and no defense to plaintiffs' claim for a refund.

The ordinance is also defective in another manner. The extra assessment by which the city has funded the special capital account has not been included in the computation of

the constitutional tax margin. The city claims that authority for this is found in Local Finance Law (§ 11.00, subd a, par 33) which sets forth a period of probable usefulness for the payment of a judgment or a compromised or settled claim against a municipality. The constitutionality of this statute's predecessor was upheld in *Cherey v City of Long Beach* (282 NY 382) when the Court of Appeals authorized a municipality to incur indebtedness to fund an account from which certain judgments could be paid. In so doing the court stated (p 391) that "[w]here a levy of taxes sufficient to pay outstanding judgments would cause such undue hardship to the taxpayers that equity will permit the tax levy to be spread over a series of years, an indebtedness incurred to fund the judgments must necessarily serve a useful purpose during the period over which the tax levy might be spread, regardless of the nature or object of the original obligations enforced by the judgments." An actual judgment or a compromised or settled claim is properly payable by a municipality. Here, however, no such judgment or claim exists. Thus, cited provisions of the Local Finance Law relied upon by appellant do not provide a basis for its actions. The ephemeral device employed evinces a disregard of the interdependent constitutional plan to control the taxing and debt-contracting power of the subdivisions of the State *(Hurd v City of Buffalo,* 34 NY2d 628, *supra). The* hardship of paying tax refunds totaling 55 million dollars was entirely self-inflicted. The entire scheme is a fiction. None of the special tax was ever collected; no special capital account was ever established; no money was ever returned to the taxpayers. As much as admitting that its repayment plan amounted to nothing more than "slight-of-hand", the city did not include this special fund in its 1979-1980 City Constitutional Tax Margin Report to the Comptroller. We cannot condone this attempt to undercut the directive of the Court of Appeals and to nullify the rights of those taxpayers who paid their taxes "under protest".

Finally, although the statutes invalidated in *Waldert, Jones* and *Bethlehem Steel* only concerned tax years 1976-1977 and 1977-1978, Special Term ordered the city to refund the excess taxes respondents paid for the full four years from 1974 to 1978. The rationale of the Court of Appeals, expressed in *Waldert, Jones* and *Bethlehem Steel* (44 NY2d 831, 835, *supra),* applies with equal force to the statutes under which the 1974-1975 and 1975-1976 excesses were levied. Conse-

quently, plaintiffs are entitled to refunds for the four tax years 1974-1978.

The judgment should be affirmed.

SIMONS, HANCOCK, JR., SCHNEPP and WITMER, JJ., concur.

Judgment unanimously affirmed, with costs.