OPINION OF THE COURT
Samuel L. Green, J.
Plaintiff has moved for summary judgment in an action to recover $175,301.71, the amount of taxes it paid in the tax years 1974-1975 through 1977-1978 which allegedly exceeded the defendant’s constitutional taxing powers pursuant to Hurd v City of Buffalo (41 AD2d 402, affd 34 NY2d 628). Although similar claims are being litigated in a class action, plaintiff was granted an order excluding it from the class.
Plaintiff is a lessee of real property situated in the City of Buffalo and, pursuant to its lease, paid all of the taxes levied by the city during the tax years 1974-1975 through 1977-1978. To determine its taxing power in each of these tax years the city excluded annual pension and retirement liabilities in reliance upon statutes held unconstitutional in the Hurd (supra) case, decided on March 27, 1974.
Although the defendant initially raised several defenses, all but one have been rejected recently by the Court of Appeals. (See Central Buffalo Project Corp. v City of Buffalo, 74 AD2d 336, affd 52 NY2d 986; Angelone v City of *961 Rochester, 72 AD2d 445, affd 52 NY2d 982.) Therefore, the only issue to be resolved on this motion is whether plaintiff paid its taxes under protest. If it did, it is entitled to a refund. (Hurd v City of Buffalo, supra; Bethlehem Steel Corp. v Board of Educ., 61 AD2d 147, mod and affd 44 NY2d 831; Pellnat v Buffalo, 80 Misc 2d 849, affd 59 AD2d 1038.)
It has long been the law in this State that illegal taxes voluntarily paid are not recoverable but that illegal taxes involuntarily paid are recoverable. (See, e.g., People ex rel. Wessel, Nickel & Gross v Craig, 236 NY 100; Aetna Ins. Co. v Mayor, 153 NY 331.) In discussing the reasoning underpinning this rule, the Court of Appeals, in Mercury Mach. Importing Corp. v City of New York (3 NY2d 418, 426-427) recognized the problem of municipal finance when it stated: “Where protest has been interposed, the municipality is notified that it may be obliged to refund the taxes and is required to be prepared to meet that contingency. If no protest has been lodged, it is generally assumed that taxes paid can be retained to meet authorized public expenditures, and financial provision is not made for contingent refunds. Such amounts may be considerable in case of highly productive taxes, paid without protest, that are eventually held to have been levied illegally. That is the basic reason for the longstanding rule that taxes paid without protest cannot be recovered merely for a mistake of law”.
Plaintiff contends that its taxes were paid involuntarily and under protest by virtue of the timely filing, prior to payment, of proceedings for review of the assessments of the Board of Assessors of the City of Buffalo pursuant to article 7 of the Real Property Tax Law.
A petition to review a tax assessment must set forth “that the assessment is illegal, specifying the grounds of the alleged illegality”. (Real Property Tax Law, § 706; emphasis supplied.) In each of the four article 7 petitions which plaintiff filed for the tax years 1974-1975 through 1977-1978, plaintiff alleged in general terms “that said assessment has not been prepared and is not made in accordance with the law and statutes” and that its “property will be taken without due process of law”. This is *962 neither the specificity that the law requires nor the type of pleading technicality that should be overlooked. (Cf. Matter of Great Eastern Mall v Condon, 36 NY2d 544; Matter of City of Little Falls v Board of Assessors of Town of Salisbury, 68 AD2d 734, 741.)
To successfully challenge a tax assessment it is not enough for the taxpayer to assert merely the conclusions of the illegality or error. He must indicate where and why that error exists. (Matter of Grossman v Board of Trustees of Vil. of Geneseo, 44 AD2d 259, 263.) The Hurd (41 AD2d 402, affd 34 NY2d 628, supra) decision was rendered on March 27, 1974. The first motion for article 7 judicial review of the assessment on plaintiff’s real property for the tax year 1974-1975 was noticed to be heard on April 30, 1974, yet the petition for that tax year and each of the three subsequent tax years in question did not contain any allegation that the reason the tax was illegal was the city’s exclusion of annual pension and retirement liabilities in reliance upon statutes held unconstitutional in Hurd (supra). In fact, a close review of plaintiff’s petitions filed in the article 7 review proceedings discloses that the primary basis for its objections had nothing to do with the issues resolved in Hurd (supra). Rather, the heart of the allegations in each of the petitions was that the assessment was unequal, not unconstitutional.
Where an assessment, although valid on its face, but in fact illegal and void, is paid with knowledge of the facts which render the assessment void and without duress, it is a voluntary payment. (Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, supra; Matter of Trustees of Vil. of Delhi, 201 NY 408, 414.) The fact that the taxpayer may have paid its taxes under a mistake of the law is no, excuse. (Mercury Mach. Importing Corp. v City of New York, supra, p 425; Adrico Realty Corp. v City of New York, 250 NY 29.)
Moreover, in order for a protest to be effective, it should be made at the time of payment. (Riverdale Country School v City of New York, 11 NY2d 741; Sloane Estates v City of New York, 287 NY 818; Pellnat v Buffalo, 80 Misc 2d 849, supra.) For example, in Central Buffalo Project Corp. v City of Buffalo (74 AD2d 336, affd 52 NY2d 986, supra), protest *963 was made by indorsing the words “paid under protest” on the checks by which such taxes were paid. This has been the traditional form of protest in tax assessment actions. (See, also, Pellnat v City of Buffalo, 80 Misc 2d 849, affd 59 AD2d 1038, supra.)
According to the Charter of the City of Buffalo (§ 554) the final assessment roll was to be completed by March 1 of each of the subject years. Pursuant to the provisions of article 7 of the Real Property Tax Law, the aggrieved owner who has followed the grievance procedure has 30 days from the publication of the final roll to protest the assessment. Plaintiff contends that by utilizing this procedure, plaintiff has protested payment of taxes levied in the following month of May or June which were paid iio earlier than the following July. In effect, plaintiff contends that the overpayment of taxes levied unconstitutionally was protested prior to the time the taxes were levied by utilizing the exclusive procedure to contest assessments.
The cases upon which plaintiff relies do not support the relief it requests. In Aetna Ins. Co. v Mayor (153 NY 331, supra), the court held that payment of taxes by a bank holding capital shares of the plaintiff insurance company was involuntary and under duress and that plaintiff was entitled to a refund of taxes pursuant to a new statute which specifically exempted the personal property of an insurance company from assessment and taxation. The court found that the bank must have made the tax payments without authority from the insurance company because the latter could not be charged with the bank’s knowledge of the applicable statute. (See, also, People ex rel. First Nat. Bank of Jeffersonville v Schadt, 237 App Div 233.) The case before this court involves prospective application of a judicial decision declaring statutory exemptions unconstitutional, not the retroactive effect of a taxing statute which mandated constitutional exemptions. Plaintiff’s counsel has failed to explain the omission in each of its article 7 petitions of any reference to the claims litigated in Hurd (41 AD2d 402, affd 34 NY2d 628, supra).
Moreover, plaintiff in the instant case, unlike the insur-. anee company in Aetna (supra), did not allege that its taxes were paid under protest in order to relieve its property *964 from a statutory lien. Rather, plaintiff herein was obligated to pay its taxes pursuant to its lease (§3.04) and State law (Real Property Tax Law, § 704, subd 3) and did so with the understanding that the commencement of an article 7 assessment review proceeding does not stay the collection of taxes or the enforcement procedures instituted by the taxing authority.
Plaintiff also relies mistakenly upon the general proposition that the pendency of a certiorari tax proceeding is the equivalent of a protest and justifies the refunds it seeks. (People ex rel. Wessel, Nickel & Gross v Craig, 236 NY 100, 105, supra.) However, plaintiff fails to establish any nexus between its allegations in this action based on the Hurd (supra) decision and its allegations in the article 7 petitions for assessment review in which the Hurd (supra) decision is not even mentioned. Plaintiff’s allegations to the city’s board of assessors that its taxes were discriminatory and excessive do not give sufficient notice to the city’s treasurer that its taxes were paid in protest of the constitutionality of the statutory exclusions upon which the taxes were computed. (Cf. Williams v Town of Irondequoit, 59 AD2d 1049, 1050; Bommarito v State of New York, 35 AD2d 458, 460.) Thus, the city had no reason to assign any portion of plaintiff’s taxes for the years in question into a reserve to meet the contingency of refunds pursuant to the Hurd (supra) decision. (Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 426, supra.) Accordingly, plaintiff’s motion for summary judgment is denied. (Andre v Pomeroy, 35 NY2d 361.)