[No. 22882. Department One. February 2, 1931.]

UNION BAG & PAPER CORPORATION, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant.*[1]

*The Attorney General* and *V. D. Bradeson,* for appellant.

*Grosscup & Morrow* and *Ben C. Grosscup,* for respondent.

PARKER, J.—The plaintiff, Union Bag & Paper Corporation, a New Jersey corporation, duly qualified to do business in this state as a foreign corporation, seeks, as assignee of Union Bag & Paper Power Cor-

[1]Reported in 295 Pac. 748.

poration, a Florida corporation, recovery from the state upon three causes of action. The first is for $750, the amount paid by that corporation to the secretary of state on September 27, 1927, for filing its articles of incorporation, alleged as having been illegally exacted of it by the secretary of state to entitle it to commence the transaction of business in this state. The second is for $180, the amount paid by that corporation to the secretary of state on September 27, 1927, for an annual license fee, alleged as having been illegally exacted of it by the secretary of state to entitle it to continue to transact business in this state during the year ending July 1, 1928. The third is for $170, the amount paid by that corporation to the secretary of state on July 2, 1928, for an annual license fee, alleged as having been illegally exacted of it by the secretary of state to entitle it to continue to transact business in this state during the year ending July 1, 1929.

The state, appearing by counsel, demurred to each cause of action, upon the ground that it does not state facts sufficient to constitute a cause of action. The superior court, upon hearing argument of counsel for the respective parties, overruled the demurrer as to each cause of action. The state elected not to plead further, and so admitting the allegations of the complaint, the superior court rendered final judgment, awarding recovery to the plaintiff against the state upon each cause of action, as prayed for. From this judgment, the state has appealed to this court.

It is conceded by counsel for the state that the state statutes under which the secretary of state exacted the filing and license fees from the power corporation, to permit it to qualify for and continue to transact business in this state, were in violation of its rights under

the constitution of the United States, and that it was, in effect, so decided by the supreme court of the United States in the case of *Cudahy Packing Co. v. Hinkle,* 278 U. S. 460. So, we need not concern ourselves with the question of the power corporation's being legally obligated to pay those fees. The question here to be decided, is whether or not the allegations of the complaint show that the power corporation was, in a legal sense, coerced into making payment of those fees to the secretary of state; and, incidentally, whether its failure to expressly protest against making each of such payments at the time of making them, is necessary to be alleged and proved, as a prerequisite to the right of recovery as prayed for.

The controlling facts alleged in the plaintiff's first cause of action, may be summarized as follows: The plaintiff is a New Jersey corporation, duly qualified to transact business in this state, and has paid its last due annual license fee. The power corporation is a Florida corporation, duly qualified to transact business in this state. On September 27, 1927, the power corporation, desiring to engage in business in this state, offered, to the secretary of state, a certified copy of its articles of incorporation and other documents required by the laws of this state to be filed by a foreign corporation, looking to its qualification to transact business in this state. Thereupon, the secretary of state refused to accept and file such tendered articles and documents in his office, unless the corporation should pay the sum of $770, as the fee required therefor by the statutes of this state. "The said Union Bag & Paper Power Corporation, under duress, threat and coercion, paid said sum of $770 in order to secure its right to do business in the state of Washington and to avoid penalties for failure to pay." Thereafter, the power corporation in writing duly as-

signed its claim against the state for the $770 so exacted from it, to the plaintiff.

The controlling facts alleged in the plaintiff's second cause of action are, in substance, of the same import as in its first cause of action, except they refer to the power corporation's paying on September 27, 1927, under like coercion, $180 as a license fee for the transaction of business in this state, for the year ending July 1, 1928.

The controlling facts alleged in its third cause of action are, in substance, of the same import as in its first cause of action, except they refer to the power corporation's paying on July 2, 1928, under like coercion, "under protest," $170 as a license fee for the transaction of business in this state for the year ending July 1, 1929. It is to be noticed that there is no allegation, in terms, in either the first or second cause of action, of the payments having been made by the power corporation under protest.

In view of the somewhat general nature of the allegations of the three causes of action, it seems necessary for us to look to the terms of the statute under which the secretary of state assumed to exact from the power corporation the filing and license fees paid to him by that corporation. We shall assume that whatever coercion there was, inducing the power corporation to pay the filing and license fees so exacted from it, was the coercion evidenced by the terms of the statutes so requiring such fees to be paid, as a prerequisite to its right to transact and to continue to transact business in this state, since there is no specific threat alleged to have been made by the secretary of state, or other state officer, against the power corporation, should it assume to transact business in this state without the payment of the demanded filing and license fees.

Now, what are the threats of the statutes of this state which, in terms, require the payment of filing and license fees by a foreign corporation, in order for it to proceed undisturbed to transact its business in this state? Are the threats of the statute merely that the state will, by some appropriate civil court action, proceed to seek recovery of such fees from the foreign corporation assuming to transact business in this state without the payment of such fees, or are the threats of the statute that the state will, for a foreign corporation commencing and continuing to transact business in this state without payment of its filing and license fees, subject it to penalties, and interference with its business?

Section 3852, Rem. Comp. Stat., permits a foreign corporation to qualify itself to do business in this state as domestic corporations are authorized to do business therein. Section 3853, as amended by chapter 147, Laws of 1925, p. 410, requires, as a qualification of a foreign corporation to commence to do business in this state, that it file, with the secretary of state, a duly certified copy of its articles or certificate of incorporation, evidencing its incorporation under the state of its residence. Section 3854 requires a foreign corporation to appoint an agent residing in this state, and authorize such agent to accept service of process for it in any action to which it is made a party, pertaining to its property or business within this state. Section 3855 provides that:

"Any foreign corporation doing business in this state which shall fail to comply with the provisions of the two preceding sections, shall be subject to a penalty of two hundred fifty dollars."

Section 3861 provides that:

"Any agent of any foreign corporation conducting or carrying on business within the limits of this state,

for and in the name of such corporation, contrary to any of the provisions of this chapter, shall be deemed guilty of a misdemeanor.''

Section 3836, as amended by chapter 149, Laws of 1925, Ex. Ses., p. 417; Rem. 1927 Sup., § 3836, requires every domestic and foreign corporation to pay for filing its articles of incorporation with the secretary of state a fee in an amount proportionate to the amount of its authorized capital stock. Section 3841, as amended by chapter 149, Laws of 1925, p. 418; Rem. 1927 Sup., § 3841, requires every domestic and foreign corporation to pay to the secretary of state, on or before July 1st of each year, an annual license fee in an amount proportionate to the amount of its authorized capital stock; and, further, that, if such fee be not paid on or before the first day of January next following, the corporation shall be subject to a penalty of $2.50. Section 3842 provides that:

''No corporation shall be permitted to commence or maintain any suit, action or proceeding in any court of this state, without alleging and proving that it has paid its annual license fee last due . . . Failure upon the part of any corporation to pay its annual license fee for a period of one year, from and after the date when such payment first became due, shall be *prima facie* evidence of the insolvency of such corporation: . . . It shall be the duty of the secretary of state to strike from the records of his office the names of all corporations which have neglected for a period of two years to pay their annual license fees; . . .''

So, a foreign corporation doing business in this state is, by the terms of our statutes above noticed, subjected to the following threats, impairing its business activities within the state: (1) For failure of such corporation to pay the prescribed filing fee, it becomes subject to a fine of $250; (2) for an agent of such

corporation, conducting business in its name in this state contrary to these statutory provisions, he shall be deemed guilty of a misdemeanor; (3) for the failure of such corporation to pay the statutory prescribed annual license fee on or before July 1st of each year, it becomes subject to a penalty of $2.50; (4) for failure of such corporation to pay the prescribed license fee when due, it ceases to be permitted to maintain any action in the courts of this state; (5) for failure of such corporation to pay the prescribed license fee for a period of one year after due, such failure becomes *prima facie* evidence of the insolvency of such corporation; and (6) for failure of such cor-poration to pay the prescribed license fee for a period of two years after due, it becomes the duty of the secretary of state to strike, from the records of his office, the name of the corporation.

The argument of counsel for the state, as we understand them, proceeds upon the theory that, since plaintiff's complaint, especially in its first and second causes of action, fails to allege that the power corporation expressly protested to the secretary of state against the payment of the filing and license fees exacted by him as prescribed by the statutes, the plaintiff is precluded from recovery as prayed for. We may concede that there are decisions which would sustain this contention, if this were a question of the payment of an illegal tax exaction, involving nothing more in its consequence than the collection of the tax as a mere civil liability against the corporation or its property, and did not otherwise impair or embarrass the business of the corporation. Our decisions in *Tozer v. Skagit County*, 34 Wash. 147, 75 Pac. 638, *Drum v. University Place Water Dist.*, 154 Wash. 700, 281 Pac. 731, and perhaps in some other cases, lend sup-

port to this contention, applicable to such a tax exaction.

However, it seems to us that express protest, at the time of payment, is but one class of evidence of the payment being made under coercion. Here, we have other very convincing evidence of coercion. Had the payments of the statutory prescribed filing and license fees not been made by the power corporation at about the time they were paid, the business rights of that corporation within this state would have been, by the express terms of the statutes above noticed, seriously threatened in the particulars above noticed. We are of the opinion that the allegations of the plaintiff's complaint, admitted by the demurrer as true, show that the payments of the exacted filing and license fees were made under such coercion as to render the state liable to return the amounts so paid, though it does not appear that they were paid under express protest.

In the text of 26 R. C. L., p. 457, we read:

"The modern tendency is toward greater liberality in recognizing the implied duress under which payment of a tax is almost always made, and even when no seizure of the taxpayer's goods is imminent, if he is put at a serious disadvantage in the assertion of his legal rights in defending proceedings brought to collect the tax, justice may require that he should be at liberty to avoid this disadvantage by paying promptly and bringing suit on his own side. He is entitled to assert his supposed right on reasonably equal terms. When payment of an illegal tax is made in order to avoid a penalty or disability which may be imposed upon the taxpayer without giving him his day in court, such payment will be considered involuntary."

And further, on page 459:

"If payment of an illegal tax is made under duress, it need not be paid under protest to entitle the taxpayer to recover it back, if he makes it clear that his

payment is involuntary, and a protest in such a case is important only as evidence that the payment was the effect of the duress."

In the text of 4 Dillon on Municipal Corporations (5th ed.), § 1620, it is said:

"The coercion or duress which will render a payment of taxes involuntary must in general consist of some actual or threatened exercise of power possessed, or assumed to be possessed, by the party exacting or receiving the payment, over the person or property of another, from which the latter has no other means or reasonable means of immediate relief except by making payment."

In the text of 3 Cooley on Taxation (4th ed.), § 1297, it is said:

"Independent of statute, a payment is not compulsory merely because made under protest. On the other hand, if paid under compulsion, no protest is necessary. However, in case of doubt, protest may be taken into account in determining the question of duress."

In *Cox v. Welcher,* 68 Mich. 263, Justice Campbell, speaking for the court, made this general observation:

"Where payments are involuntary, and made under legal duress, there has never been any rule requiring a specific protest. The attempt to compel payment where there is no legal burden is regarded as a legal injury, and payment made to avoid the seizure and sale of property to pay the wrongful claim can be recovered back as an extorted sum for which there was no consideration."

It is true that the payment by the power corporation of the exacted filing and license fees here in question, was not directly to avoid the unlawful seizure and sale of any of the power corporation's property; but the payments were made to avoid the above noticed statutory threatened interference with its lawful busi-

ness in this state. Among other decisions lending strong support to our present view of the power corporation's rights here drawn in question, we note: *City of Chicago v. Sperbeck,* 69 Ill. App. 562; *American Dist. Telegraph Co. v. City of New York,* 213 App. Div. 578, 211 N. Y. Supp. 262; 243 N. Y. 565, 154 N. E. 607; *Newberry v. City of Detroit,* 184 Mich. 188, 150 N. W. 838; *Swift Co. v. United States,* 111 U. S. 22; *Atchison, T. & S. F. R. Co. v. O'Connor,* 223 U. S. 280.

Our own decision in *Olympia Brewing Co. v. State,* 102 Wash. 494, 173 Pac. 430, is in harmony with, and in principle strongly supports, our present view. While there seems to have been a formal protest against the payment of the license fee there exacted of and paid by the brewing company, we said:

"The fact that the fees were paid with or without protest is of no moment if their payment was made under compulsion, and it cannot be gainsaid that payments made to prevent the sacrifice of large capital investments are not voluntarily made but are made as the result of compulsion."

We conclude that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., MAIN, MITCHELL, and HOLCOMB, JJ., concur.