OPINION OF THE COURT
Samuel L. Green, J.
In this class action suit, defendants who are individual and corporate taxpayers have moved for summary judgment against the plaintiff City of Buffalo (City) for the refund of real property taxes paid from 1974 through 1978. Two questions of law are presented. First, whether defendants’ claims for tax refunds were timely asserted. Second, whether all defendants, or only those who paid their taxes under appropriate legal protest, are entitled to refunds.
The City asserts that section 324 of the Charter of the City of Buffalo is a complete defense to the claims of all the taxpayers since no actions were commenced within one year of the payment of their taxes. The taxpayers assert that CPLR 213 (subd 2) allows them six years in which to commence an action for the refund of illegal or unconstitutional taxes.
If section 324 does not apply then this court must decide not only whether protest is necessary, but also what forms of protest are appropriate. If protest is not required, the City estimates that the refund to all taxpayers would be $60 million. If protest is required, the total estimated recovery would amount to approximately $10 million.
*545 The City commenced this class action to economize its legal resources and to secure one judgment which would encompass all claims arising from the Hurd decision. (Hurd v City of Buffalo, 41 AD2d 402, affd 34 NY2d 628.) This court certified two major classes of defendants — those who allegedly paid their taxes under protest and those who did not. Some defendants were permitted to participate by retained counsel. Defendants answered and counterclaimed for refund of their taxes illegally collected by the City from 1974 through 1978. (These claims were identical to allegations in separate actions commenced against the City prior to this class action.) The City uniformly replied to each counterclaim by asserting the affirmative defense of the one-year limitation in section 324 of the city charter.
Section 324 is derived from section 9 of chapter 275 of the Laws of 1880 and states in relevant part: “An action or proceeding to test the validity or regularity of any tax or assessment contained on the annual assessment rolls shall be commenced within one year from the first publication of the notice that the roll in which the tax or assessment is contained is ready for collection as provided by section five hundred and ninety of this act.” (Emphasis added.)
Defendants do not challenge the City’s power to adopt this provision. (See, e.g., Matter of Hoople, 179 NY 308; Loomis v City of Little Falls, 176 NY 31.) Since the “validity or regularity” of their taxes had already been decided adversely to the City in Hurd (supra), defendants submit there is no need to relitigate that issue in this class action. Defendants are simply saying to the City you collected our taxes unconstitutionally, we want our money back, and the traditional six-year period of limitations should apply. (Diefenthaler v Mayor, Aldermen & Commonalty of City of N. Y., 111 NY 331, 337; Ann., 92 ALR 1360.)
The City asserts, however, that a fair interpretation of section 324 of the Charter of the City of Buffalo must be guided by the presumption that in 1880 the Legislature intended to place a time limitation upon actions or proceedings then available for the review of assessments. Since these included not only traditional certiorari proceedings but also actions seeking tax refunds, the City *546 speculates that the Legislature must have intended section 324 to apply to all actions, regardless of form, in which taxpayers sought refunds. The City further contends that section 324 must apply to more than just declaratory judgment actions which question the validity but not the recovery of taxes, because such proceedings were not available in this State until 1921 (Civ Prac Act, § 473). Since the one-year period in section 324 is a “different time *** prescribed by law” than the six-year period in CPLR 213 (subd 2), the City concludes that the claims are time barred. (CPLR 201.)
The City’s argument, however, ignores the letter and spirit of recent tax refund cases in which the City did not fare so well. It is not the “validity or regularity” language in section 324 that is determinative. Rather, it is the preceding words “to test”. Since the taxes paid by defendants had already been held unconstitutional for each of the four tax years here in question (Central Buffalo Project Corp. v City of Buffalo, 74 AD2d 336, affd 52 NY2d 986), there was no need for defendants “to test” the legality of the taxes they paid. In fact, defendants did not request such relief, either in the complaints in their original actions, or in their counterclaims in this class action.
The law is clear. An action to recover taxes paid on an unconstitutional levy is based upon an implied contractual obligation and is subject to a six-year Statute of Limitations which accrues when the taxes are paid. (Diefenthaler v Mayor, Aldermen & Commonalty of City of N.Y., 111 NY 331, 337-338, supra; see, also, First Nat. City Bank v City of New York Fin. Admin., 36 NY2d 87, 93; People ex rel. First Nat. Bank of Jeffersonville v Schadt, 237 App Div 233; Ann., 131 ALR 822.) Since the taxing authorities of the City have continued to ignore the rationale of Hurd (supra) and have collected taxes which they knew were illegal, defendants were entitled to bring a plenary action to recover their money. They were under no legal obligation to first test the validity or regularity of the taxes they paid. Section 324 of the Charter of the City of Buffalo may have been a valid defense for the City in the days before Hurd but it has no relevance to the monetary relief requested in this class action.
*547 Defendants ask why section 324 was not raised as a defense in the Central Buffalo Project case in which the City was ordered to refund more than one million dollars? Defendants submit that because the City has never asserted this defense before, despite having a full and fair opportunity to do so, it should be collaterally estopped from defending this action on the basis of section 324. The doctrine of collateral estoppel, however, has no application to multiple taxpayer suits. (Murphy v Erie County, 28 NY2d 80, 85-86; Siegel, New York Practice, §447, p 593; cf. McCrory Corp. v Gingold, 52 AD2d 23, 26-27.)
Since the six-year period of limitations applies, the only further issue before this court is which defendants are entitled to recover. It has long been the law in this State that illegal taxes voluntarily paid are not recoverable. Only those taxes paid under protest or duress may be recovered. (Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418; Adrico Realty Corp. v City of New York, 250 NY 29; Peyser v Mayor, Aldermen & Commonalty of City of N. Y., 70 NY 497; see, also, Pellnat v City of Buffalo, 80 Misc 2d 849, revd on other grounds 87 Misc 2d 742, affd 59 AD2d 1038; 10 Lafayette Sq. Holdings v City of Buffalo, 108 Misc 2d 960.) This is so because real property taxes are intended for current expenditures for the common good. It would be unjust to require a municipality to repay them after they had been properly expended. Yet this would often be the case if suit could be brought for recovery without notice having been given at the time of payment because “[i]f no protest has been lodged, it is generally assumed that taxes paid can be retained to meet authorized public expenditures, and *** provision is not made for contingent refunds.” (Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 426, supra.)
Defendants who did not protest payment of their taxes contend, however, that they are entitled to refunds because Hurd {supra) provided ample notice to the City that its taxes were illegal. These defendants further argue that protest was unnecessary because they paid their taxes under duress of a statutory lien. (Charter of City of Buffalo, § 534.) Neither argument is persuasive.
*548 Underlying the requirement of protest is not only the notion of notice but also the idea that the initiative must be on the taxpayer, at the time of payment, to alert the municipality that he wants his money back. A taxpayer may voluntarily pay his tax, despite knowledge of its illegality, perhaps recognizing that the duty to pay the tax does not arise out of a contract but from an obligation resting upon every citizen to contribute to the support of the government to which he owes allegiance. The primary purpose of the protest requirement, therefore, is to notify the municipality, not of the illegality of the tax, but of the intent of the taxpayer who paid it.
Moreover, from a practical vantage point, this court recognizes that if protest was unnecessary all real property taxpayers would be treated alike. A municipality could then exceed constitutional tax limits with impunity, since the excess would be refunded to all taxpayers in the very same amounts as they originally paid the excess. Everyone might get “paid” but no one would receive any benefit. If protesters and nonprotesters are to be treated alike then they will all end up paying themselves the refunds — a result which would be clearly illegal and unacceptable. (Angelone v City of Rochester, 72 AD2d 445, affd 52 NY2d 982.)
The duress argument of the nonprotesting defendants is based upon Adrico Realty Corp. v City of New York (250 NY 29, 33, supra), in which the Court of Appeals stated that “duress exists when the payment of money becomes necessary to obtain the immediate liberty of person or the possession of property.” (Emphasis added.) The tax at issue in Adrico was a statutory service charge imposed upon a property owner to reimburse the City of New York for the cost of repairing street pavement in front of his property. A lien attached once the city paid the repair bill but the Comptroller could not collect the amount paid until he certified the lien. The lien imposed a substantial interest penalty for nonpayment. In order to redeem the property from the lien it was necessary to pay not only all penalties, but also the cost of advertising and other expenses created by the city ordinance. When Adrico Realty Corp. refused to remedy cracks in the pavement, the city made the repairs *549 and demanded reimbursement. And when the mortgagee of the premises became insistent upon the removal of the lien, Adrico paid the assessment, with interest and penalties, under protest.
In this class action, however, there is no evidence that foreclosure proceedings were threatened if the taxes were not paid. The nonprotesting defendants elected to pay their taxes first and to contest the validity of them at a later date. The mere imposition of a real property tax coupled with the consequence of a lien does not automatically render payment of the tax compulsory. Otherwise there would have been no need for the appellate courts to continually re-emphasize the requirement of appropriate legal protest in the Hurd-related litigation. (See, e.g., Bethlehem Steel Corp. v Board of Educ., 61 AD2d 147, 166-167, affd 44 NY2d 831, 835; Angelone v City of Rochester, 72 AD2d 445, 448-450, affd 52 NY2d 982, supra.)
The nonprotesters in this class action, moreover, were not faced with an interest rate penalty if the statutory lien was not removed. The interest rate in Adrico (supra) was considerably more than the legal rate for money or the rate collected on unpaid judgments and was fixed by law solely for the purpose of coercing the property owner to reimburse the city for the costs of street repair. Further, since the city could not charge to the owner the cost of repairs due to its own neglect or carelessness, an issue of fact was presented. If the property owner would have lost on this question it would have been obliged to pay the penalty as well as other incidental expenses which had accrued during the interim. In this class action however, no issue of fact was presented, the nonprotesting defendants were not confronted with a severe interest penalty, and neither their liberty nor immediate possession of their property was threatened. Payment of their taxes, therefore, was not made under duress. (Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 425, supra; cf. People ex rel. Wessell, Nickel & Gross v Craig, 236 NY 100, 104-105; City of Rochester v Chiarella, Supreme Ct, Monroe County, Nov. 3, 1981.)
Some of the affidavits and exhibits in support of the various motions for summary judgment sufficiently specify the method of protest (letter, stamp on check or tax receipt, *550 etc.) the date each tax was paid, and the amount of refund requested for each tax year in issue. The City does not controvert any of these allegations. Defendants who paid their taxes under appropriate legal protest, therefore, are entitled to summary judgment. (Zuckerman v City of New York, 49 NY2d 557, 562.) What constitutes sufficient protest is a question of law to which this court now turns.
While precedent clearly establishes that protest is required (Paramount Film Distr. Corp. v State of New York, 30 NY2d 415, 419-420; Mercury Mach. Importing Corp. v City of New York, supra) at the time of payment (Riverdale Country School v City of New York, 13 AD2d 103,105-106, affd 11 NY2d 741), the cases do not specify how protest was made in each instance or which forms of protest are valid and which are not. Since the purpose of protest is to notify the municipality that moneys received may have to be refunded at a later date, the burden is on the taxpayer to affirmatively give such notice. Unless the protest is in writing, no record will be available to substantiate the taxpayer’s claim. It is not necessary, however, that the taxpayer lodge the protest himself because retained counsel will often prepare a letter of protest to accompany the payment of the tax, particularly in the case of a bank acting as an escrow agent for its mortgagors. The protest must be made in each and every year for which recovery is sought. Those defendants who protested for only some of the tax years in question and relied in the later years upon their earlier protest, are entitled to refunds only for the tax years in which protest was made.
The more difficult question is whether the protest must specify the legal basis upon which the taxes are involuntarily paid. In the case at bar, several defendants allege that they simply indorsed “paid under protest” on their checks or requested that the taxing authority similarly stamp their tax receipts and no more should be required. The typical taxpayer is unrepresented by counsel at the time he pays his tax and may not be able to understand or articulate for example, the unconstitutional aspects in the City’s computations of the pension and retirement components of his real property taxes. Moreover, the precise legal ground for the illegality may not be *551 settled at the time the taxes are paid. Traditionally, taxpayers have recovered refunds when their checks or receipts have been stamped “paid under protest” (see, e.g., Central Buffalo Project Corp. v City of Buffalo, supra; Pellnat v City of Buffalo, supra) and this court is not aware of any practical or policy considerations to compel it to depart from such precedent.
Accordingly, having carefully reviewed the pleadings, affidavits and exhibits presented, it is the order of this court that the following defendants are entitled to summary judgment for tax refunds in the amounts demanded in their respective counterclaims plus interest at the rate of 3% per annum. (General Municipal Law, §3-a, subd 1; see, also, First Nat. City Bank v City of New York Fin. Admin., 36 NY2d 87, 95, supra; CC&F Buffalo Dev. Co. v Tully, 103 Misc 2d 1060):
1. Edwin F. Jaeckle, as trustee for the estate of Kate Robinson Butler
2. Edwin F. Jaeckle, as trustee for Neb Liquidating Trust for the Righters, et al.
3. Dowd Rental Services & Sales, Inc.
4. Liberty National Bank & Trust Company
5. Merchants Mutual Insurance Company
6. Niagara Mohawk Power Corporation
7. William I. Shapiro & Susan R. Shapiro
8. Peter J. Schmitt Co. Inc.
9. Standard Milling Co.
10. Trico Products Corporation
11. Wehle Electrical Co. Inc.
- 12. National Fuel Gas Distribution Corporation
13. National Gypsum Company
14. L. L. Bergers, Inc.
15. CC & F Development Corporation
16. Mason O. Damon
17. Mason O. Damon for the estate of Alice Flershem
18. Atlas Steel Casting Company
*552 19. Graphic Controls Corporation (for tax years 1974-1975 and 1975-1976, only).
The entry of said summary judgments shall be held in abeyance (CPLR 3212, subd [e], par 2) until such time that the motions by the following defendants, which are continued under CPLR 3212 (subd [f]), are finally resolved by affording them an opportunity to submit to this court admissible and uncontroverted evidence that the protest they have alleged was legally appropriate at the time they paid their taxes:
1. David & Patricia Schictel
2. Phillip W. Ransom
3. Herbert J. Mellan
4. Rose M. Guarasci
5. Robert Boasberg
6. Harold Schectman
7. Nelson R. Barrett
8. Vega Instruments, Inc.
9. Michael J. Ryan
Despite the failure of the City to cross-move for summary judgment this court, pursuant to CPLR 3212 (subd [b]), orders that summary judgment be granted in favor of the City and against the following defendants who did not make appropriate legal protest of their taxes:
1. Members of the “first subclass” denominated in the class certification order of this court on August 17,1981 as “all payers of real property taxes to the city of buffalo FOR ANY AND/OR ALL OF THE FISCAL YEARS 1974-1975 THROUGH 1977-1978, INCLUSIVE, NOT UNDER PROTEST.”
2. Members of the “second subclass” denominated in the class certification order of this court on August 17,1981 as “all real property owners in the city of buffalo, COUNTY OF ERIE AND STATE OF NEW YORK HAVING ‘TAX ESCROW AGREEMENTS’ WITH FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER AND/OR HOMESTEAD SAVINGS AND LOAN ASSOCIATION OF ROCHESTER AND/OR FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION AS SUCCESSOR IN INTEREST TO HOMESTEAD SAVINGS AND LOAN ASSOCIATION DURING ANY OR ALL FISCAL YEARS OF 1974-1975, 1975-76, 1976-77, and/or 1977-78.”
*553 3. New York Telephone Company, Inc.
4. Constance Stafford
5. John W. Danforth Company
6. J. M. Cranz Co., Inc.
7. Klepfer Realty Corporation
8. Petersen & Even Corporation
9. Saturn Club
With respect to the “third subclass” denominated in the certification order of this court of August 17,1981 as “all PAYERS OF REAL PROPERTY TAXES TO THE CITY OF BUFFALO FOR ANY AND/OR ALL OF THE FISCAL YEARS 1974-75 THROUGH 1977-78, inclusive, under protest,” counsel for said class is ordered to notify each member of the class of the court’s memorandum decision herein. Said counsel is further ordered to notify each class member that upon submission to this court of admissible and uncontroverted evidence of the amount, date and precise form of protest of the payment of their taxes for any or all of the fiscal years 1974-1975 through 1977-1978, they will be entitled to summary judgment.
All other motions before this court are denied.
Pursuant to CPLR 907 (subd 5), the City is directed to formulate a plan of payment to satisfy the judgments herein and to submit said plan to this court within 60 days of the entry of the final order herein.
Further factual disputes, concerning the issues raised in this proceeding, shall be referred to this court.