ERA AVIATION, INC., Appellant,

v.

Bruce A. CAMPBELL, in his capacity as Commissioner of Transportation and Public Facilities; Alaska Department of Transportation and Public Facilities; and the State of Alaska, Appellees.

ALASKA AIRLINES, INC.; Reeve Aleutian Airways, Inc.; Northern Air Cargo, Inc.; and Peninsula Airways, Inc., Appellants,

v.

Frank G. TURPIN, in his capacity as Commissioner of Transportation and Public Facilities; Alaska Department of Transportation and Public Facilities; and the State of Alaska, Appellees.

Supreme Court Nos. S–6467, S–6468.

Supreme Court of Alaska.

March 29, 1996.

Rehearing Denied May 10, 1996.

James N. Leik, Perkins Coie, Anchorage, for Appellant Era Aviation, Inc.

James N. Reeves, Steven L. Jones and Brenda T. Rhoades, Bogle & Gates, Anchorage, for Appellants Alaska Airlines, Inc., Reeve Aleutian Airways, Inc., Northern Air Cargo, Inc., and Peninsula Airways, Inc.

Carolyn E. Jones, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Air carriers sought refunds of landing fees they paid to the Alaska Department of Transportation and Public Facilities (Department) under a regulation subsequently declared illegal. The superior court dismissed their claims on summary judgment. We affirm.

### II. FACTS AND PROCEEDINGS

In June 1991 the Department promulgated a regulation which increased landing fees at State rural airports.[1] In September 1991 several air carriers (the Original Plaintiffs), who are not parties to the present action, brought suit against the Commissioner of Transportation and Public Facilities, the Department, and the State, alleging that the regulation was illegal, and requesting injunctive relief and a refund of the landing fees paid by them under the regulation. In

---

1. The regulation became effective on August 1, 1991, and provided that air carriers would pay forty cents per 1,000 pounds of certificated maximum gross takeoff weight (CMGTW) per landing. The regulation provided that these landing fees would apply to certified rural airports and excluded certain types of aircraft. The regulation further provided that payment of landing fees would be submitted by the 15th of the month following the month in which the landings occurred.

March 1993 the superior court granted partial summary judgment to the Original Plaintiffs, holding that the landing fees regulation did not comply with the Alaska Administrative Procedure Act (APA) and was thus invalid and unenforceable. The court enjoined the Department from collecting fees under the regulation and ordered the Department to reimburse to the Original Plaintiffs the landing fees they paid under the regulation, with interest. The Department did not appeal this ruling.

Four days before the court entered its order granting partial summary judgment to the Original Plaintiffs, Alaska Airlines, Reeve Aleutian Airways, Northern Air Cargo, and Peninsula Airways moved to intervene in the original litigation. The court granted their motion on April 26, 1993. The court noted that the Department conditionally did not oppose the intervention, but requested the opportunity to assert new defenses against the intervenors' claims for refunds.

 In August 1993 Era Aviation filed a separate lawsuit for a refund of landing fees it had paid between September 1991 and March 1993. The court consolidated the actions brought by Era and the intervenors. The defendants moved for summary judgment. In June 1994 the court granted that motion, holding that the intervenors and Era (collectively "Air Carriers") were required to protest the landing fees when they paid and failed to do so, that their fees were not paid

under duress, and that the equal protection provision of the Alaska Constitution did not require that refunds be given to all carriers despite the refunds awarded the Original Plaintiffs. This appeal followed.

## III. *DISCUSSION* [2]

 All parties agree that the Air Carriers' remedy for relief lies in a common law action in assumpsit.[3] However, the Department argues that in Alaska, an action in assumpsit requires a protest at the time of payment and a showing of involuntary payment in order to make a payer eligible for reimbursement of amounts paid if a statute is later deemed illegal. The Air Carriers argue that the protest required under Alaska law applies only to tax payments and that user fees, such as the landing fees at issue here, require at most a showing that the payment was made involuntarily.

### A. *Actions in Assumpsit under Alaska Common Law*

 Alaska Statute 43.10.210 provides that the Department of Administration must refund a taxpayer the amount of tax paid under protest to the Department of Revenue if the taxpayer recovers a judgment against the Department of Revenue, or if it is obvious to the Department of Revenue that the taxpayer would obtain such judgment if he or she undertook legal proceedings.[4]

---

2. We will uphold an order of summary judgment if the record presents no genuine issue of material fact and "the moving party was entitled to judgment on the law applicable to the established facts." *Newton v. Magill*, 872 P.2d 1213, 1215 (Alaska 1994). When the lower court makes this determination, all reasonable inferences of fact from the record must be drawn against the moving party and in favor of the non-moving party. *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116 (Alaska 1990). If in reviewing the summary judgment order we must answer questions of law, we will adopt the rule of law which is most persuasive in light of precedent, reason and policy. *Ford v. Municipality of Anchorage*, 813 P.2d 654, 655 (Alaska 1991).

3. In addition, Era argues that this court could provide a remedy by recognizing an implied private right of action for enforcement of AS 37.10.050(a). Because this issue was not adequately briefed, we will not consider it on appeal.

*Petersen v. Mutual Life Ins. Co.*, 803 P.2d 406, 411 (Alaska 1990).

4. AS 43.10.210 provides that:

**Recovery of overpayments and protested payments.** (a) The Department of Administration shall, with the approval of the attorney general and the Department of Revenue, refund to a taxpayer the amount of a tax paid to the Department of Revenue under protest and deposited in the treasury if

(1) the taxpayer recovers judgment against the Department of Revenue for the return of the tax; or

(2) in the absence of a judgment, it is obvious to the Department of Revenue that the taxpayer would obtain judgment if legal proceedings were prosecuted by the taxpayer.

(b) The Department of Administration shall refund the amount of an overpayment to a taxpayer if the Department of Revenue, on audit of the account in question, determines

In *State v. Wakefield Fisheries, Inc.*, 495 P.2d 166, 172 (Alaska 1972), we held that, in addition to the statutory remedy provided by AS 43.15.010 (now AS 43.10.210), a taxpayer could also seek a refund through the common law assumpsit remedy upon a showing of involuntariness and duress, despite a failure to protest at the time of payment. In *Principal Mutual Life Insurance Co. v. State*, 780 P.2d 1023, 1030 (Alaska 1989), this court "overrule[d] that portion of *Wakefield* which holds that there is no requirement that a taxpayer formally protest the payment of the tax at the time of payment in order to subsequently maintain a common law action in assumpsit for a tax refund." We have since reaffirmed the proposition that, under common law as well as under statute, a protest at the time of payment is a prerequisite for an action to recover taxes.[5]

In essence, the Department argues that the protest requirement articulated in *Principal Mutual* applies to all actions in assumpsit, whether the plaintiffs seek refunds of taxes, user fees, or license fees. The Air Carriers argue that *Principal Mutual* only affected the common law action in assumpsit for tax refunds and left undisturbed the common law action in assumpsit for user fees.

The Air Carriers present several arguments in support of their position that a protest at the time of payment should not be required for reimbursement of user fees paid under an illegal regulation. They correctly argue that the majority common law rule is that protest at the time of payment is not required for reimbursement of taxes or fees where the payment is shown to have been made under duress.[6] The New Jersey Su-

that a remittance by the taxpayer exceeds the amount due.

(c) If the department and the attorney general determine that a licensee has paid a license tax and is prevented from using the license by court order, administrative decision, or other cause beyond the control of the taxpayer, the Department of Administration shall refund the amount of the license tax to the licensee.

5. *Kenai Peninsula Borough v. Port Graham Corp.*, 871 P.2d 1135, 1139 (Alaska 1994) (reaffirming *Principal Mut.* and holding that State and local law supplanted the common law remedy for tax reimbursement); *Saunders Properties v. Municipality of Anchorage*, 846 P.2d 135, 139 n. 7 (Alaska 1993) (stating in dictum that, "[a]ctions to recover taxes paid under protest, both under subsection (a) [of AS 29.45.500] and at common law, require a formal protest at the time of payment"); *Carlson v. State*, 798 P.2d 1269, 1280 (Alaska 1990) (interpreting *Principal Mut.*) ("we [have] clearly held that both under the statute and common law, the taxpayer must formally 'protest the payment of the tax at the time of payment in order to subsequently maintain' either a common law or statutory cause of action"); *Bethel Util. Corp. v. City of Bethel*, 780 P.2d 1018, 1021 (Alaska 1989) ("Insofar as *Wakefield* allowed an action for recovery of taxes without following the statutory requirement that the taxes be paid under protest, it has been overruled").

6. *See Brandt v. Riley*, 139 Cal.App. 250, 33 P.2d 845, 846 (1934) (taxes illegally collected under duress may be reclaimed unless statute provides that written protest is required); *Whyte v. State*, 110 Cal.App. 314, 294 P. 417, 418 (1930) ("when payment is made under compulsion, no protest is necessary, in the absence of a special statute to the contrary"); *Ves Carpenter Contractors, Inc. v.*

*City of Dania*, 422 So.2d 342, 345 (Fla.App.1982) (applying principal that the payment of an illegal tax, even without protest, in order to avoid forfeiture of the right to do business is not a voluntary payment); *Broward County v. Mattel*, 397 So.2d 457, 460 (Fla.App.1981) (stating the fact that tax not paid under protest "does not determine whether it was paid voluntarily or involuntarily and has little or no weight on the question"); *Selectmen of Hull v. County Comm'rs of Plymouth*, 12 Mass.App.Ct. 900, 422 N.E.2d 787, 788 (1981) (stating the "general rule" applied in tax cases where no statute makes provision to the contrary that one may not recover money paid under a claim of right unless payment has been made under duress); *Private Truck Council of America, Inc. v. State*, 128 N.H. 466, 517 A.2d 1150, 1156 (1986) (in order to recover taxes under common law plaintiffs must prove they paid tax involuntarily) (citing *Ward v. Love County*, 253 U.S. 17, 22, 40 S.Ct. 419, 421, 64 L.Ed. 751 (1920)); *Continental Trailways, Inc. v. Director, Div. of Motor Vehicles*, 102 N.J. 526, 509 A.2d 769, 781 (1986) (when an illegal levy is voluntarily paid the assumption that money illegally collected by the government must be refunded does not apply) (citing *In re Increase in Fees by N.J. State Bd. of Dentistry*, 84 N.J. 582, 423 A.2d 640 (1980)); *City of Buffalo v. Wysocki*, 112 Misc.2d 543, 447 N.Y.S.2d 386, 389 (1982) (only taxes paid under protest or duress may be recovered); *Union Bag & Paper Corp. v. State*, 160 Wash. 538, 295 P. 748, 751 (1931) ("where payments are involuntary, and made under legal duress, there has never been any rule requiring a specific protest.").

This court stated in *Principal Mutual*:
The general rule at common law is that if an illegal tax is voluntarily paid by the taxpayer without compulsion it cannot be recovered

preme Court has reasoned that the requirement that taxes or fees must have been paid involuntarily arises from the fact that people are supposed to know the law and thus if one "voluntarily makes a payment which the law would not compel [one] to make, [one] cannot afterwards assign [one's] ignorance of the law" as grounds justifying reimbursement. *In re Increase in Fees by N.J. State Bd. of Dentistry*, 84 N.J. 582, 423 A.2d 640, 643 (1980) (citing 3 T. Cooley, *Taxation* § 1282, at 2565 (4th ed. 1924)). *See also S.S. & O. Corp. v. Township of Bernards Sewerage Authority*, 62 N.J. 369, 301 A.2d 738, 748 (1973) (stating that the question a court must ask in

determining whether payment should be reimbursed is, "has the person complaining been constrained to do what he otherwise would not have done"). Thus, substantial authority supports the rule that a showing of involuntary payment is sufficient under the common law to support reimbursement. Indeed, a showing of protest alone may be insufficient under the common law. Restatement of Restitution § 75 cmts. f & h (1937).[7]

The Air Carriers also argue that denying a refund of fees paid under an illegal regulation undermines AS 37.10.050, which prohibits the collection of unauthorized fees.[8]

7. Section 75 of the Restatement of Restitution provides in relevant part:

> (1) Except as otherwise provided for by statute, a person who without mistake of fact pays a tax or assessment to a municipal corporation, or to a State if a suit for restitution is permitted against the State, is entitled to restitution of the amount paid if, but only if,
>
> (a) the statute, ordinance, or administrative order by virtue of which the tax or assessment was levied and paid was void as to the payor, and
>
> (b) the payor reasonably believed that if the payment was not made the means taken to enforce collection of the tax or assessment would subject him to serious risk of imprisonment or of the loss of possession of his things or of other substantial loss.

Comment f states that restitution is allowed if the payment was made under duress, including the threat of inability to continue or retain one's business. Comment h states that payment under protest is not sufficient evidence of duress standing alone and that the failure to object at time of payment will not prevent later restitution except, as stated in Comment j, where the payer seeks to recover from an officer who has paid over the money. Restatement of Restitution § 75.

The Department argues that the landing fees are outside the scope of § 75, citing Comment c, which states that the section does not apply to charges made only to the users of the service. However, the distinction between user fees and other types of assessments appears immaterial.

Although the Restatement cites no case law supporting a distinction between user fees and other taxes and assessments, the language of Comment C suggests that user fees are presumed voluntary because one chooses to become a user. *See also*, 36A C.J.S. *Fee* at 249 (1961) (a fee can be defined as a "voluntary payment for a particular privilege"); *Stewart v. Verde River Irrigation*

*& Power Dist.*, 49 Ariz. 531, 68 P.2d 329, 335 (1937) ("a fee is always voluntary in the sense that the party who pays it originally has, of his own volition, asked a public officer to perform certain services for him which presumably bestow upon him a benefit not shared by other members of society"). Nonetheless, case law does not distinguish between user fees and other assessments in determining whether reimbursement should be allowed. *See, e.g., In re Increase in Fees by N.J. State Bd. of Dentistry*, 423 A.2d at 644 (holding that occupational fees were involuntarily paid and thus should be reimbursed); *Pacific Am. Fisheries v. Mullaney*, 105 F.Supp. 907, 909 (D.Alaska 1952) (the common law of assumpsit encompasses any "money had and received," not just taxes, when the duty to pay the money is imposed by law). Moreover, precluding recovery of user fees on a theory they are presumed voluntary serves no purpose because the payer is nevertheless required to demonstrate the fee was paid involuntarily to be eligible for a refund. Thus, even if user fees were not covered by § 75, the analysis would be nearly the same under the common law doctrine of business compulsion. *See Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 21–22 (Alaska 1978) (satisfying business compulsion test requires that one party involuntarily accepted the terms of another as a result of the other party's coercive acts and that the circumstances permitted no alternative). Finally, AS 43.10.210 covers license fees as well as taxes. Thus, the Alaska legislature did not distinguish between at least some types of user fees and taxes in adopting AS 43.10.210.

8. AS 37.10.050(a) provides:

> A state agency may not charge for the provision of state services unless the charge (1) is set or otherwise authorized by statute; and (2) where a regulation is necessary, is set by or provided for in a regulation that meets the standards of AS 44.62.020 and 44.62.030. A fee or other charge that is set by regulation may not exceed the estimated actual costs of the state agency in administering the activity

---

> back in an action at law.... Accordingly, there is also authority which holds that taxes ... cannot be recovered where there was no protest made at the time of payment.

780 P.2d at 1030 (footnotes omitted).

Finally, the Air Carriers argue that the rationale behind the requirement of a protest at the time of payment should not apply where the State did not alter its fiscal plan even when the Original Plaintiffs protested, and in fact spent the landing fees on operations.

The problem with the Air Carriers' analysis is that their arguments regarding user fees would apply equally to claims for reimbursement of taxes and license fees. We have already resolved, on grounds of public policy, the question whether a taxpayer must file a protest at the time of payment in order to seek a refund. As this court has stated:

> The burden of requiring a taxpayer to file a protest at the time of payment of the tax is at most minimal. On the other hand the requirement of a protest serves the important function of providing state government with notice of the claimed tax illegality, the grounds advanced in support of the claimed illegality, and affords the state the opportunity to fashion budget appropriations, or expenditures, taking into account the magnitude of the claimed tax illegality.

*Principal Mut.*, 780 P.2d at 1030–31. Other jurisdictions have also upheld protest at the time of payment on grounds of public policy. *See Brandt v. Riley*, 139 Cal.App. 250, 33 P.2d 845, 847 (1934) (statute requiring written protest is intended not only to furnish proof of involuntary payment but also to warn collector that the tax is claimed to be illegal); *Reynolds v. City and County of San Francisco*, 53 Cal.App.3d 99, 125 Cal.Rptr. 673, 674 (1975) (same). Courts have also stated that the requirement of a protest at the time of payment is designed to liberalize the repayment of illegally collected levies by eliminating the need to make the often difficult showing of duress. *Principal Mut.*, 780 P.2d at 1030 ("The purpose of [AS 43.10.210] is to liberalize recoveries by creating rights where formally none existed.") (quoting *Pacific Am. Fisheries, Inc., v. Mullaney*, 105

F.Supp. 907, 909 (D.Alaska 1952)); *Carpenter v. City of Ann Arbor*, 35 Mich.App. 608, 192 N.W.2d 523, 524 (1971) ("The effect of the payment under protest statute is to make such a payment involuntary irrespective of any question of duress."). Alaska Statute 43.10.210(c), which applies to license taxes, further supports the Department's case because license taxes are analytically identical to user fees. *Carlson v. State*, 798 P.2d 1269, 1280 (Alaska 1990). *See* Restatement of Restitution § 75 cmt. c (distinguishing "compulsory contributions" which cannot be avoided by refusing to receive the benefits from charges "made only to users of the service").

We hold that the requirement of a formal protest at the time of payment, *see Principal Mutual*, 780 P.2d at 1030, applies to all actions in assumpsit brought against a government entity. In addition to the reasons discussed above, this rule is also beneficial because it establishes a uniform requirement for all actions in assumpsit, ensuring greater certainty about the procedure one must follow when paying a sum to the government under what is believed to be an invalid statute or regulation. Thus, whether the Air Carriers are entitled to a refund of fees paid under the invalid regulation depends on whether they protested the regulation at the time of payment.

## B. *Protest at Time of Payment*

■ As noted above, a protest at the time of payment provides the government with notice of the claimed illegality and allows the State to more accurately budget revenues by taking the magnitude of the allegedly illegal levy into account. *Principal Mut.*, 780 P.2d at 1030. Thus, the protest must not only notify the State that the payer believes the levy to be illegal, but must also signal that the payer intends to seek a refund of the monies illegally levied. *Private Truck Council of America, Inc. v. State*, 128 N.H. 466, 517 A.2d 1150, 1156 (1986); *City of Buffalo v.*

---

or providing the service unless otherwise provided by the statute under which the regulation is adopted; this limitation does not apply to sales of property by a state agency. Unless specifically exempted by statute, a state agency authorized to collect or receive fees, licenses, taxes, or other money belonging to the state shall account for and remit the receipts, less fees to which the collector is entitled by statute or regulation, to the Department of Revenue at least once each month. The commissioner of administration shall separately account under AS 37.05.142 for receipts deposited under this subsection.

*Wysocki,* 112 Misc.2d 543, 447 N.Y.S.2d 386, 389 (1982). Without a protest, the State would not be able to accurately determine the likely budgetary impact of the allegedly illegal levy.

Air Carriers argue that even if a protest is required, they met that requirement because: (1) Air Carriers stated their opposition to the landing fees on numerous occasions; and (2) the suit filed by the Original Plaintiffs gave the Department notice that the collection of landing fees from the Air Carriers could be illegal. Both of these arguments fail.

The Air Carriers' opposition to the landing fee regulation does not constitute a protest of payment. The Air Carriers lobbied extensively before the Department and the legislature in an attempt to prevent the adoption of the landing fees program. After the regulation was adopted, the Air Carriers continued their attempt to persuade the Department to pursue an alternate method of increasing its operating revenues.

■ However, as the Department points out, virtually every regulation or statute is opposed by some subset of the polity. This opposition is generally expressed in the same ways used by the Air Carriers to express their opposition to the landing fee regulation—by writing letters, giving public testimony, and lobbying legislators. Those opposing new regulations will sometimes state their belief that the proposed regulations are illegal, as the Air Carriers did here. Nonetheless, the frequency of such opposition and the tendency of many to accept disagreeable laws and regulations without legal challenge renders opposition to a regulation insufficient notice that those voicing their opposition will someday sue the government and seek a refund of monies they have paid under the regulation. Because the purpose of the protest requirement is to provide notice to the State that a payer intends to seek refund of monies it believes to have been illegally collected, expressions of disagreement which do not provide this notice should not be considered protests authorizing reimbursement. The Air Carriers' opposition to implementing this landing fees regulation was not sufficient to put the Department on notice that Air Carriers intended to legally challenge the regulation and seek reimbursement of monies collected thereunder.

Air Carriers suggest that letters in the record voicing their opinion that the fees were inequitable and discriminatory create a genuine issue of material fact justifying remand. Nothing in the record suggests that the Air Carriers provided notice, contemporaneous with their payment, that they intended to seek reimbursement.

We do not feel that it is profitable to inquire into whether a given complaint of unfairness is vociferous enough to give notice of an impending legal challenge. Theoretically a payer might make clear to the State that it intends to seek reimbursement for a given payment without actually saying so. However, the uncertainty that the State would face were we to sanction such a possibility would far outweigh any benefits that might accrue should this eventuality arise. Moreover, courts are ill suited to reconstruct, ex post facto, the State's perspective on a payer's communication of dissatisfaction.

To later bring an action in assumpsit, a payer must specifically notify the State, whether by the words "paid under protest" or otherwise, that it intends to seek reimbursement. Because there is no evidence in the record that such notice was given, summary judgment was proper.

Similarly, the lawsuit filed by the Original Plaintiffs did not satisfy or excuse the Air Carriers' obligation to protest when paying. That lawsuit could have satisfied only the Original Plaintiffs' protest obligation. *Cf. Corporate Property Investors v. Board of Assessors,* 153 A.D.2d 656, 545 N.Y.S.2d 166, 170 (1989) (holding that commencement of declaratory judgment action challenging tax assessment satisfied the requirement of protest at time of payment). Even though, as the Air Carriers assert, that lawsuit notified the Department that the legality of its landing fee regulation was in question, it did notify the Department that the Air Carriers would also challenge the regulation and seek a refund of landing fees they had paid under the regulation. As we have seen, a protest is required because the State must be able to determine accurately what part of its collect-

ed revenues might be subject to refund. This ability would be undermined if a single lawsuit (which was not even a class action) were deemed sufficient notice to make all payers under the regulation eligible for refunds.

The Air Carriers' strongest argument is that, as the Department concedes, the State spent all the money collected from every air carrier, and did not separate landing fees collected from the Original Plaintiffs from landing fees collected from the intervening air carriers and Era. A failure by the State to use the protest for the purpose intended might imply that the State is using the protest requirement to arbitrarily bar claims of some payers, rather than to formulate a dependable fiscal projection. It is equally inferable, however, that the State determined that it was not fiscally imperative here to segregate the disputed landing fees. Regardless, this court has held that the State should be given the opportunity to consider the potential effect of refund claims when assessing its financial condition. There has been no showing that this opportunity is of no utility or has been abused. We hold that the lawsuit filed by the Original Plaintiffs did not satisfy the Air Carriers' protest requirement.

C. *Equal Protection*

■ The Air Carriers argue that denying them reimbursement while reimbursing the Original Plaintiffs violates the Equal Protection Clause of the Alaska Constitution.[9] The Air Carriers and Department agree that this classification must satisfy the "rational basis" test, which requires that a classification be reasonable and not arbitrary and that it rest upon a distinction "having a fair and substantial relation to the object of the legislation." *Herrick's Aero–Auto–Aqua Repair Serv. v. State*, 754 P.2d 1111, 1114 (Alaska 1988) (quoting *Isakson v. Rickey*, 550 P.2d 359, 369 (Alaska 1976)). The Department argues that

distinguishing between protesting and non-protesting payers is a legitimate, rational basis for refunding the fees paid by the Original Plaintiffs while refusing to refund the fees paid by the Air Carriers. The Air Carriers concede that this distinction would arguably justify the differential treatment, except that the Department did not in fact segregate the fees paid by the Original Plaintiffs. The Air Carriers argue that because the Department did not segregate those fees, the Department's justification rests upon a hypothetical claim that if the Air Carriers had protested, the Department would have changed its fiscal plans in preparation for the possibility of this additional refund.

Air Carriers assert that a classification for purposes of equal protection may not be based on hypothetical facts. *See Herrick's*, 754 P.2d at 1114; *Isakson*, 550 P.2d at 362. The distinction between protesting and non-protesting payers is not hypothetical; it is an actual distinction which is present in this case. We articulated the justification for this distinction in *Principal Mutual*, 780 P.2d at 1030, and for the reasons noted *supra*, part A, it is rational. Moreover, as noted above, although the Department does not appear to have changed its fiscal plans in response to the Original Plaintiffs' lawsuit, that circumstance does not demonstrate that the Department would not have changed its fiscal plans if it had known that additional air carriers also intended to seek refunds of the fees they paid. Consequently, we hold that the Department's refusal to refund the landing fees paid by the Air Carriers did not violate their right to equal protection.[10]

IV. *CONCLUSION*

Having failed to protest when paying the fees imposed by a regulation later held to be invalid, the Air Carriers are not entitled to a refund of those fees. Further, the Department's refusal to refund those fees does not

9. Article I, section 1 of the Alaska Constitution provides:
 This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

10. As we uphold summary judgment on several other grounds, it is not necessary to address the Department's argument that Air Carriers waived their right to claim reimbursement.

violate Air Carriers' right to equal protection. We AFFIRM the judgment below.

MOORE, C.J., not participating.